Ivan W. REIHMANN, Appellant,

v.

George FOERSTNER, Alex Meyer, Elmer Dittrich, Amana Refrigeration, Inc., a Wholly Owned Subsidiary of the Raytheon Company, the Merchants National Bank of Cedar Rapids, a National Banking Association and Dittrich-Meyer Corporation, an Iowa Corporation, Appellees.

No. 84–753.

Supreme Court of Iowa.

Oct. 16, 1985.

Ross H. Sidney, Henry A. Harmon and Mark J. Wiedenfeld of Grefe & Sidney, Des Moines, for appellant.

Thomas M. Collins, Patrick M. Roby, Richard S. Fry and Diane Kutzko of Shuttleworth & Ingersoll, P.C., Cedar Rapids, for appellee bank.

Robert C. Tilden, Stephen J. Holtman and David A. Hacker of Simmons, Perrine, Albright & Ellwood, Cedar Rapids, for the other appellees.

Considered by REYNOLDSON, C.J., and UHLENHOPP, McCORMICK, McGIVERIN and SCHULTZ, JJ.

McCORMICK, Justice.

Plaintiff Ivan W. Reihmann appeals from judgment on directed verdicts for defendants on several claims against them. The determinative issues are the sufficiency of evidence to support submission to the jury

of claims of intentional infliction of emotional distress, slander, intentional interference with plaintiff's employment contract, wrongful discharge, and breach of an option contract. We hold that the trial court was correct in finding the evidence was insufficient to support jury submission of any of the claims. Therefore we affirm the judgment.

The issues can best be understood against the background of the relationship of the parties. Plaintiff Reihmann is a lifelong resident of the Amana Colonies. At the times material to this case he was farm manager of defendant The Merchants National Bank of Cedar Rapids (the bank), a job he had held for approximately eighteen years. He was also a director of the Amana Society, a corporation headquartered in the Amana Colonies that owns farm land and various Amana enterprises. Defendant George Foerstner is also an Amana resident. At the times material here he was chairman of the board of defendant Amana Refrigeration, Inc. and a director of the bank. Defendant Alex Meyer is Foerstner's son-in-law, also an Amana resident, and at the times material here was president of Amana Refrigeration, Inc. and a director of the bank. Defendant Amana Refrigeration, Inc. was one of the bank's largest customers. Meyer and defendant Elmer Dittrich, also an Amana resident, were majority stockholders of Dittrich-Meyer Corporation, a corporation that invested in farm land in which plaintiff held a minority interest and for which he did farm work.

Plaintiff's various claims are based on events starting in May 1976 and culminating with his resignation from the bank on March 20, 1979. They all relate to his activities in the Amana Colonies. In reciting these events, because plaintiff's appeal is from directed verdicts, we view the evidence in the light most favorable to plaintiff.

In May 1976 the Amana Society initiated a lawsuit against certain private landowners in the Amana Colonies seeking to enforce land use deed restrictions. Plaintiff was elected to the Amana Society board later in 1976 and voted consistently to support the litigation. Foerstner opposed the lawsuit, alleging it was too costly and without merit. A close friend of his was a defendant in the case. In July 1978 Foerstner called plaintiff at work and expressed his opposition to the litigation. When plaintiff reaffirmed his position, Foerstner told him, "I thought you were a pretty smart fellow but now I think you're stupid."

In August 1978 bank president James Coquillette called plaintiff to a meeting with Foerstner in his office. At this meeting Foerstner again berated plaintiff for his role in the litigation and told him to remember that Foerstner was responsible for him having his job with the bank. After Foerstner left the meeting, Coquillette told plaintiff to follow his conscience. The Amana litigation was tried in September 1978, with plaintiff testifying for the society and Foerstner for the defendants.

Plaintiff separately was working on arrangements to move his farm management department from the main bank in Cedar Rapids to the bank's office in Amana. He wanted to office in Amana so he would be closer to home and to much of the land he was managing. The move was an exception to the bank policy of not employing Amana residents in its Amana office based on privacy interests of Amana customers. Out of concern that the move might create a problem with Amana customers, Coquillette had cleared the move with Alex Meyer, whom he viewed as a representative of Foerstner. Plaintiff moved his office to the Amana office on January 12, 1979. At that time Foerstner was at his winter residence in Florida.

On February 19, 1979, four employees of Amana Refrigeration, Inc. were elected to the Amana Society board. With their election the balance of power on the board shifted to directors opposing the society's litigation. On the afternoon of February 20, however, before the new directors took office, the district court issued its decision

in favor of the society's position in the lawsuit.

The following events subsequently occurred:

February 22—Plaintiff was called by Coquillette who told him he had been getting telephone calls from Foerstner accusing plaintiff of looking at the files of Amana bank customers. Although Coquillette said he knew the charge was untrue plaintiff would have to move his office to another place in Amana or back to Cedar Rapids. Coquillette told plaintiff Foerstner was "a very vindictive, vengeful person."

February 23—Plaintiff was called by Dittrich who told him a meeting of Dittrich-Meyer shareholders would be held at Dittrich's home on February 24.

February 24—At the meeting in Dittrich's home, Dittrich and Meyer told plaintiff they wanted plaintiff out of the Dittrich-Meyer Corporation but did not give what plaintiff considered a valid reason.

February 25—Dittrich called plaintiff in an effort to arrange a meeting to discuss terms to purchase plaintiff's interest, but plaintiff refused to meet.

February 27—A bank official called plaintiff and told him the bank would move his office back to Cedar Rapids the following day. At plaintiff's request the move was delayed pending his meeting with Coquillette on March 5.

February 28—Dittrich again called plaintiff in an effort to arrange a meeting but plaintiff had other commitments that interfered.

March 1—Dittrich and Meyer went to plaintiff's bank office and offered him $12,-000 for his Dittrich-Meyer Corporation stock. When he refused the offer, they sought to discuss alternative settlements, but plaintiff declined.

March 5—Plaintiff met with Coquillette in Cedar Rapids to protest being moved. Coquillette acknowledged that the move was precipitated by the complaints of Foerstner and Meyer. Plaintiff was emotionally upset and took the rest of the week off at Coquillette's suggestion.

March 13—The bank notified plaintiff he would be moved back to Cedar Rapids the next day.

March 14—Upon his return to work at the Amana bank office, plaintiff discovered the bank had disconnected his phone.

March 15—The bank moved plaintiff's secretary and office equipment back to Cedar Rapids.

March 16—Plaintiff called Coquillette from his home and, in a conversation that he tape recorded, he stated he was not going to move because the complaints of Foerstner were invalid. Coquillette said the move was nevertheless necessary to stop the complaints. When plaintiff said he would not move, Coquillette urged him to take some time and reconsider.

March 20—Plaintiff resigned his position with the bank. He also sent a letter to the Dittrich-Meyer Corporation in which he refused to sell his stock and sought to exercise a 1973 option to purchase additional stock. He subsequently brought the present lawsuit.

This court eventually reversed the decision of the trial court in the Amana litigation. *See Amana Society v. Colony Inn, Inc.*, 315 N.W.2d 101 (Iowa 1982). That result, however, is not relevant here.

Plaintiff's petition contained nine counts in which he sought actual and punitive damages against defendants on various theories. After a lengthy trial, the trial court sustained defendants' motions for directed verdict on the ground of insufficiency of the evidence. Even though plaintiff presents twelve issues for review, we find that the outcome of the appeal is controlled by his failure to demonstrate error in the court's ruling on five of his theories of action.

■ I. *Intentional infliction of emotional distress.* The elements of the tort of intentional infliction of emotional distress have been discussed in recent cases, including *Vinson v. Linn-Mar Community School District*, 360 N.W.2d 108 (Iowa 1984), and *Harsha v. State Savings Bank,*

346 N.W.2d 791 (Iowa 1984). In the present case the trial court found that plaintiff failed to adduce substantial evidence on the elements of outrageous conduct and extreme emotional distress. We need address only the outrageous conduct element.

■ For conduct to be outrageous, it must be "so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Restatement (Second) of Torts* § 46; Comment d (1965) (approved and applied in *Harsha,* 346 N.W.2d at 801, and *Vinson,* 360 N.W.2d at 118). It is for the court in the first instance, on a motion for directed verdict, "to determine whether the relevant conduct may reasonably be regarded as outrageous." *See Vinson,* 360 N.W.2d at 118.

Plaintiff's strongest case was against Foerstner. His claim is that Foerstner threatened him with job reprisals if he continued to support the Amana litigation. He asserts Foerstner carried out his threat by forcing the bank to move him back to Cedar Rapids and having him expelled from the Dittrich-Meyer Corporation.

No evidence was presented that connected Foerstner to the Dittrich-Meyer events. In an effort to establish a connection, plaintiff relied on evidence of the close business and personal association and similar views of Foerstner and Meyer. These close ties invite speculation that Foerstner and Meyer may have been consulting each other and acting in concert to force plaintiff's office relocation and to expel him from the Dittrich-Meyer Corporation. Under the record, however, this is entirely speculative.

In determining whether Foerstner's conduct could reasonably be found to be outrageous, it must be examined in the context of circumstances that were undisputed. The bank had a policy of not employing Amana residents at its Amana office, at least in positions where they might see customer accounts. A number of Amana customers desired that their accounts not be seen by other Amana residents. After plaintiff's office was moved, several customers raised questions about plaintiff's presence in the Amana office. Specific complaints were made about his presence to Foerstner. Although Meyer had approved plaintiff's move, Foerstner had not. When Foerstner called Coquillette he asked that plaintiff be moved back to Cedar Rapids.

■ Thus the jury could find that Foerstner used his influence to force the moving of plaintiff's office. It is undenied, however, that Foerstner's actions followed customer complaints and went no further than to eliminate the basis for those complaints by seeking plaintiff's relocation from the place he had been for six weeks to the place he had worked for more than seventeen years. Assuming Foerstner had previously threatened plaintiff with loss of his job if he persisted in his support of the Amana litigation, that threat was not carried out. We do not believe Foerstner's conduct could reasonably be regarded as outrageous under the stringent standard in our cases.

■ We reach the same conclusion on plaintiff's claims against Dittrich, Meyer and the Dittrich-Meyer Corporation. Plaintiff acknowledges he had differences with Dittrich and Meyer relating to management of the corporation. These differences concerned accounting methods and investment philosophy. They preceded Dittrich and Meyer's efforts to purchase his interest in the corporation. Assuming these differences were only a pretext for forcing plaintiff out, the record does not show any conduct that could be found to be outrageous under the applicable standard. Dittrich and Meyer offered a substantial payment to plaintiff for his stock and based their offer on a shareholders' agreement to which plaintiff was a party. Thus, even if they had an unworthy motive for ousting plaintiff from the corporation, the record does not show they employed methods that reasonably could be found to be beyond the bounds of decency.

■ Plaintiff separately accuses Dittrich and Meyer of breach of an option contract under which he had the right to purchase

additional stock. If he were correct in this accusation, the breach of contract still could not establish outrageous conduct. We find that the trial court did not err in directing a verdict for Dittrich, Meyer and the Dittrich-Meyer Corporation on this claim.

■ The case against the other parties is even weaker. For example, the claim against the bank appears mainly to rest on an assertion that it did not keep a commitment to support plaintiff in his dispute with Foerstner. Assuming the bank bent to pressure in violation of an assurance or even an obligation to plaintiff, the bank's conduct could not be found to be outrageous as the standard is defined in our cases. We agree with the trial court that the record does not contain substantial evidence of outrageous conduct toward plaintiff by any of the defendants. Nor does it support plaintiff's claim that they conspired to engage in such conduct.

II. *Slander.* The slander claim against all defendants rests entirely on testimony by plaintiff that Coquillette told him Foerstner complained that plaintiff was "getting into the files and records" of Amana customers. This testimony came in over defendants' hearsay objection. In ruling on the motion for directed verdict, the trial court found that Foerstner's objection should have been sustained. Because the only evidence of an allegedly slanderous statement thus was found to be inadmissible hearsay as to the person who uttered the alleged slander, the trial court reasoned that defendants were entitled to a directed verdict on that claim.

The hearsay issue involves Iowa Rule of Evidence 805:

> Hearsay included within hearsay is not excluded under the hearsay rules if each part of the combined statements conforms with an exception to the hearsay rule provided in these rules.

Analyzed in accordance with this rule, the purported statement of Foerstner would not be hearsay because it was offered as an admission. Thus if the statement were offered in the testimony of someone who heard it, it would be admissible. The independent Coquillette out-of-court statement quoting Foerstner, however, is obviously hearsay. That statement was offered for the truth of its assertion that Foerstner made the defamatory statement.

■ Plaintiff contends his testimony about Coquillette's statement is admissible as an admission by the bank. A statement is an admission of a party when it is "a statement made by [the party's] agent or servant concerning a matter within the scope of [the] agency or employment, made during the existence of the relationship." Iowa R.Evid. 801(d)(2)(D). Plaintiff's problem here, however, is that even if his report of Coquillette's statement were admissible on this ground against the bank, the statement retains its character as hearsay to Foerstner and the other parties. *See Shepherd v. McGinnis,* 257 Iowa 35, 42, 131 N.W.2d 475, 479 (1964). The same result would occur if the statement were admissible against the bank under one of the hearsay exceptions also urged by plaintiff. Moreover, because Coquillette merely disclosed to plaintiff the alleged slanderous statement of a third party, the statement would not support a slander claim against the bank. Separate evidence that bank employees may have heard from some unidentified source that plaintiff was being moved back to Cedar Rapids for snooping in customer accounts does not alone establish a case of slander against any party and does not affect the admissibility of the Coquillette statement.

■ We also reject plaintiff's alternative argument that the statement was admissible under Iowa Rule of Evidence 801(d)(1)(E) as a statement by a coconspirator. We agree with the trial court that plaintiff failed to make a prima facie case of conspiracy between the bank and Foerstner. *See State v. Blyth,* 226 N.W.2d 250, 269 (Iowa 1975).

Because plaintiff's testimony concerning Coquillette's statement was the only evidence of slander, was not probative of slander by the bank, and was not admissible against any other party, the trial court was correct in directing a verdict for all defendants on the slander claim.

**III.** *Intentional interference with contract.* Plaintiff relied again on Foerstner's conduct in allegedly forcing his office relocation to prove his claim of intentional interference with his employment contract with the bank. We recently recognized that this tort is available even when the contract is terminable at will. *See Toney v. Casey's General Stores, Inc.,* 372 N.W.2d 220 (Iowa 1985). The elements of the tort are listed in *Stoller Fisheries, Inc. v. American Title Insurance Co.,* 258 N.W.2d 336, 340 (Iowa 1977). The tort is not established when the alleged tortfeasor's conduct does not cause the contract between two other parties to be breached.

Plaintiff here alleged a violation of the branch of the tort stated in *Restatement (Second) of Torts* section 766 (1977):

> One who intentionally and improperly interferes with the performance of a contract between another and a third person by inducing or otherwise causing the third person not to perform the contract, is subject to liability to the other for pecuniary loss resulting from the failure of the third person to perform the contract.

Plaintiff asserts Foerstner is the principal tortfeasor and the bank is the "third person" who failed to perform the contract.

The alleged failure of performance by the bank was in reassigning plaintiff from the Amana office to the Cedar Rapids office of the bank. Although plaintiff separately claimed this reassignment constituted a constructive discharge, we agree with the trial court that plaintiff had no right under the employment contract to be assigned to Amana. He had worked in the Cedar Rapids office for more than seventeen years prior to being moved to Amana, and plaintiff acknowledged at trial that the bank was not obliged to assign him there. He had no contractual right to remain in the Amana office.

We thus conclude, as did the trial court, that Foerstner did not induce the bank to breach its employment contract with plaintiff. Because Foerstner could not be liable

on this claim, no defendant sought to be held liable through Foerstner could be held liable either. Nor could plaintiff's conspiracy claim be sustained. The trial court was correct in directing a verdict for defendants on the claim of interference with his employment contract.

**IV.** *Wrongful discharge.* Plaintiff's wrongful discharge claim is similarly flawed. This claim rests on his contention that the bank's reassignment of his office constituted a constructive discharge of his at-will employment. He asserts this court should recognize a wrongful discharge tort in circumstances like those alleged here. If we do so, he argues that the record contains substantial evidence to support recovery on this claim.

We find that plaintiff did not get over the first hurdle. His evidence would not support a finding of constructive discharge. To establish constructive discharge a party has the burden of showing that a reasonable person in the party's position would have felt compelled to resign. *First Judicial District Department of Correctional Services v. Iowa Civil Rights Commission,* 315 N.W.2d 83, 88 (Iowa 1982). The issue thus is not how plaintiff felt but whether a reasonable person in his position would have felt the same way.

Plaintiff testified he resigned rather than return to the Cedar Rapids office because, he said, returning "would create a difficult situation for me in any relations with fellow employees, the clients, and my faith and trust in management as to my future." Even under this version of his resignation, plaintiff made a voluntary rather than compelled choice. Nor do we believe a reasonable person in his position would be justified in feeling compelled to resign. Plaintiff's real complaint was with what he perceived as the bank's knuckling under in his conflict with Foerstner. The bank was happy with his work and wanted him to continue. He had no substantial complaint against the bank except for its giving in to Foerstner. He chose to resign rather than endure injured pride. This is not a case where an employer made working condi-

tions so bad the employee was "forced into an involuntary resignation." *See Young v. Southwestern Savings & Loan Association,* 509 F.2d 140, 144 (5th Cir.1975).

█ We find that the bank's alleged failure to support plaintiff in his differences with Foerstner could not be found to be a constructive discharge. The trial court therefore did not err in directing a verdict for the bank on that claim.

V. *The option contract.* The trial court directed a verdict for defendants on plaintiff's claim against Dittrich, Meyer and the Dittrich-Meyer Corporation for breach of an option contract under which he asserted a right in 1977 to purchase five additional shares of Dittrich-Meyer stock.

The option contract consisted of a letter of intent drafted by plaintiff and agreed to by Meyer for the corporation on March 19, 1973. It provided:

I hereby wish to state my intent to purchase from the Dittrich-Meyer Corporation of Amana, Iowa, five shares of common stock for $500/per share at a rate of not less than one share annually for the next five years, including 1973–1977. Payment for each share to be at the rate of not less than $40 per month, beginning March, 1973.

In the event I fail to exercise this option in any year above written, this offer becomes null and void, both as to the Corporation and the undersigned purchaser.

It is undisputed that plaintiff made one forty dollar payment in March 1973 and none thereafter. In 1977 he nevertheless sought to purchase the five shares for the $500 per share price stated in the letter of intent, and the corporation refused. Plaintiff subsequently sent the stockholders a memorandum in which he stated:

I write this memo for the record and not in any protest to any action or inaction taken at our most recent meeting.

Notwithstanding the agreement to purchase the five shares of stock, I think I am entitled to purchase the additional shares of stock on the basis of my contribution to the progress of the corporation. . . .

He thus appears to have acknowledged that his option contract was a nullity. In any event, we find that because he did not keep his part of the bargain he lost his right to purchase additional stock under the letter of intent.

█ The 1977 purchase offer was a new offer which the corporation refused. No new agreement was entered. We therefore agree with the trial court that plaintiff offered no evidence to show defendants breached an option contract permitting plaintiff to purchase additional stock. The directed verdict on this claim was correct.

We find no merit in any of plaintiff's arguments against the rulings directing verdicts on all of his claims. We have not addressed all of his arguments but believe no purpose would be served in doing so. Some of the arguments are moot. Others are tenacious and resourceful but insubstantial.

We affirm the trial court.

AFFIRMED.