**Clarence L. McCLINTON,
Plaintiff–Appellee,**

v.

**IOWA METHODIST MEDICAL CENTER, A Corporation,
Defendant–Appellant.**

No. 88–509.

Court of Appeals of Iowa.

May 23, 1989.

Mark McCormick and Laura Goecke Burns, of Belin, Harris, Helmick, Tesdell, Lamson & McCormick, P.C., Des Moines, for defendant-appellant.

Phillip F. Miller, Des Moines, for plaintiff-appellee.

OXBERGER, Chief Judge.

Defendant-appellant Iowa Methodist Medical Center (hospital) appeals from the jury verdict and subsequent judgment granting plaintiff-appellee Clarence L. McClinton $158,000 in actual damages and $1 in punitive damages on plaintiff's intentional infliction of emotional distress claim. We reverse and remand.

The hospital contends the district court erred in (1) failing to grant its motion for directed verdict or judgment n.o.v. due to the insufficient evidence to support the claim, (2) failing to grant its motion for new trial based on insufficient evidence and error in damage instruction, and (3) overruling certain hearsay objections thereby allowing plaintiff to testify certain hospital staff had given him employment recommendations following his dismissal.

Our scope of review on denial of motion for directed verdict or motion for judgment notwithstanding the verdict is for correction of errors at law. Iowa R.App.P. 4. In determining whether a jury question was engendered, we examine the evidence in the light most favorable to plaintiff, regardless of whether such evidence is contradicted, to determine if reasonable minds could differ on the issue. *Vinson v. Linn–Mar Community School Dist.*, 360 N.W.2d 108, 118 (Iowa 1984); *Harvey v. Palmer College of Chiropractic*, 363 N.W.2d 443, 444 (Iowa App.1984).

The elements of the tort of intentional infliction of emotional distress which must be supported by substantial evidence are:

(1) Outrageous conduct by the defendant;

(2) the defendant's intention of causing or reckless disregard of the probability of causing, emotional distress;

(3) the plaintiff's suffering severe or extreme emotional distress; and

(4) actual and proximate causation of the emotional distress by defendant's outrageous conduct.

*Tomash v. John Deere Industrial Equipment Co.*, 399 N.W.2d 387, 392 (Iowa 1987).

The hospital contends plaintiff failed to produce sufficient evidence of outrageous conduct as defined in prior Iowa cases to support the verdict. We agree.

Outrageous conduct has been described as conduct "so extreme in degree as to go beyond all possible bounds of decency and to be regarded as atrocious, and utterly intolerable in a civilized community." *Tomash*, at 392 (citing *Reihmann v. Foerstner*, 375 N.W.2d 677, 681 (Iowa 1985)). *See also Harsha v. State Savings Bank*, 346 N.W.2d 791, 801 (Iowa 1984); Restatement (Second) of Torts § 46 comment (d) (1965).

Prior case law states an employer has a duty to refrain from abusive behavior toward employees. *Vinson v. Linn–Mar Community School District*, 360 N.W.2d 108, 118 (Iowa 1984); *Blong v. Snyder*, 361 N.W.2d 312, 316 (Iowa App.1984).

Plaintiff contends two of his supervisors at defendant hospital had a plan by which long-term employees were harassed until

they either quit or, as in his case, became so nervous they made errors which justified dismissal.

The evidence presented at trial reveals plaintiff was employed by the hospital in 1955 as a medical technologist. He became a night supervisor of the laboratory in the 1970's and was considered a valued employee. His supervisory duties were to take up approximately twenty percent of his time while the remainder consisted of the usual technologist's duties.

In late summer or early fall of 1983 plaintiff's supervisor, Lavonne Cox, received complaints from several night-shift technologists about plaintiff's failure to schedule enough help on Fridays, plaintiff being absent from the lab for significant periods of time, and the number of Fridays plaintiff was taking off. Ms. Cox told them she needed written verification of the complaints before anything could be done. One technologist told plaintiff Ms. Cox made a statement something to the effect "we've been trying to get rid of him for a long time." Plaintiff was given no disciplinary notices but Ms. Cox did discuss the complaints with plaintiff. After receiving one or two verified complaints, she then transferred plaintiff to the day shift to work as a medical technologist in the hematology department. Plaintiff's pay and benefits were not decreased. When told of the transfer plaintiff did not express any objections or file any complaints. Plaintiff testified at trial he considered this a demotion, that he was convinced the supervisors were "out to get him," and he became very emotionally distraught after the transfer.

Plaintiff started work on the day shift November 1, 1983. Ms. Cox's friend, Ms. Connie Keller, was his supervisor. Plaintiff began a six-to-eight week orientation and training procedure to teach him the proper procedures and how to operate machines he had not used during the night shift.

Ms. Keller began receiving complaints from other employees regarding errors made by plaintiff, his slowness, and inability to learn the new procedures. Ms. Keller met with plaintiff to discuss the problems.

She also discussed the problems with Ms. Cox. Ms. Keller suggested plaintiff see a doctor to determine if there was a medical reason he was having problems adjusting.

Plaintiff agreed to see Dr. Haughland who met with plaintiff and found nothing wrong but suggested he see a clinical psychologist. The clinical psychologist ran plaintiff through a battery of tests and indicated plaintiff performed below what he considered to be normal. He was then referred to a neurologist.

At this point Ms. Keller sent plaintiff a letter and told him he was being put on a six-month medical leave although neither doctor had recommended such a leave. The neurologist found nothing wrong with plaintiff and he was called back to work after approximately one month of leave. Plaintiff testified the numerous tests and doctors he was told to see was a part of a plan to convince him he was suffering from Alzheimer's disease, dementia, or memory loss. Dr. Haughland gave plaintiff's wife, a nurse, a brochure and told her to look for possible signs of dementia. Plaintiff testified Dr. Haughland stated he felt he was being used and that someone was out to get the plaintiff.

Plaintiff returned to work on March 15, 1984. Ms. Keller again began to receive reports from hospital employees complaining about plaintiff's work performance regarding late or incorrect entries of test results in the computer, mislabeling, failure to become oriented to all the machines and procedures, and slow testing while working in the emergency room. Ms. Keller testified she received at least fourteen such reports. Ms. Keller testified some of the errors were quite serious and she was concerned about the welfare of the patients because of plaintiff's poor work performance. As a result plaintiff was given verbal and written warnings as well as two suspensions prior to his dismissal in May 1984. Plaintiff denied responsibility for some of the errors but stated some of the errors were due to the intense stress he was working under which was a direct result of the hospital's plan to get him.

We find such conduct by the hospital does not create a prima facie showing of outrageous conduct in light of prior Iowa cases dealing with this issue. The case of *Vinson v. Linn–Mar Community School Dist.*, 360 N.W.2d 108 (Iowa 1984), involved a bus driver's allegations she was intentionally harassed by her supervisor who accused her of falsifying time cards despite knowledge she had not done so. Such allegations followed the driver's criticism of the way the seniority policy was implemented in a specific instance. *Id.* at 112. In that case the Iowa Supreme Court concluded:

> Even though we believe a jury could find defendants engaged in a deliberate campaign to badger and harass plaintiff, we do not believe their conduct rises to the level of extremity essential to support a finding of outrageousness. The jury could find that defendants' actions were petty and wrong, even malicious, but we do not believe a trier of fact could reasonably conclude that the conduct went beyond all possible bounds of decency and must be regarded as atrocious and utterly intolerable in a civilized community.

In *Northrup v. Farmland Industries, Inc.*, 372 N.W.2d 193, 198 (Iowa 1985), the plaintiff-employee contended he was dismissed for alcoholism and his supervisor accused him of lying and falsifying documents. The court upheld the trial court's entry of summary judgment for the employer on the intentional infliction of emotional distress claim concluding, even if such allegations were true, it could not reasonably be considered outrageous conduct. *Id.* at 199.

The court did find sufficient evidence to support a verdict for an employee on his claim of intentional infliction of emotional distress in *Blong v. Snyder*, 361 N.W.2d 312 (Iowa App.1984). In that case the jury could reasonably have found the employee, initially dismissed for filling out his time cards per his supervisor's instructions, was verbally abused on almost a daily basis when reinstated. *Id.* at 317. The employee was "accused of numerous insulting and humiliating behavior from which the jury could conclude the employer's conduct was conduct exceeding all bounds usually tolerated by decent society." *Id.*

We find no such extensive scheme of harassment in the present case. Plaintiff's supervisors received complaints from his co-workers and other hospital employees regarding his capabilities as night supervisor and as a medical technologist. Plaintiff admitted he expressed no disagreement with the decision to transfer him to the day shift. The supervisors testified they felt the transfer and eventual dismissal of plaintiff was necessary to protect the patients as plaintiff was conducting laboratory tests and making numerous errors. Plaintiff did not deny responsibility for several of the errors but feels the hospital is ultimately responsible because his errors were a direct result of his highly emotional state following the transfer.

The Restatement (Second) of Torts has been favorably cited in numerous Iowa cases dealing with the intentional infliction of emotional distress claims and states in part:

> It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort.... The liability clearly does not extent to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. The rough edges of our society are still in need of a good deal of filing down, and in the meantime plaintiffs must necessarily be expected and required to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind.

Restatement (Second) of Torts § 46 comment (d) (1955). *See Reihmann*, 375 N.W.2d at 681; *Harsha*, 346 N.W.2d at 801; *Vinson*, 360 N.W.2d at 118; *Blong*, 361 N.W.2d at 316.

Whether conduct may reasonably be considered as outrageous is an issue for the

court to determine in the first instance. *Halderman v. Total Petroleum, Inc.*, 376 N.W.2d 98, 104 (Iowa 1985). We conclude the trial court erred in submitting plaintiff's claim of intentional infliction of emotional distress because of the lack of evidence showing outrageous conduct by the hospital. We reverse and remand for entry of judgment for defendant. Having found for the defendant on this issue, we need not address the remaining issues.

REVERSED AND REMANDED.