**Priscilla BALMER, Appellant,**

v.

**HAWKEYE STEEL, Appellee.**

No. 98–1078.

Supreme Court of Iowa.

Jan. 20, 2000.

John M. Loeschen of Loeschen & Loeschen, Burlington, for appellant.

Martha L. Shaff and Peter J. Thill of Betty, Neuman & McMahon, L.L.P., Davenport, for appellee.

Considered by LARSON, P.J., and LAVORATO, SNELL, TERNUS, and CADY, JJ.

LAVORATO, Justice.

In this employment termination case, we must decide whether constructive discharge, standing alone, is an actionable tort in Iowa. The district court concluded it was not and sustained a motion for directed verdict as to an at-will employee's claim of wrongful termination. We agree and affirm.

Priscilla Balmer worked at Hawkeye Steel in Haughton, Iowa, from February 1994 to April 1996. She was an employee at will.

In July 1996 Balmer sued Hawkeye. She alleged that while employed she was subjected to verbal and mental harassment and abuse and that Hawkeye did nothing to stop the conduct. She further alleged that her employment conditions became so intolerable that she had to quit, resulting in what she claimed was a constructive discharge. However, she did not allege that Hawkeye breached an employment contract, or violated any state or federal civil rights laws or public policies of this state. Hawkeye denied it had constructively discharged Balmer.

The parties tried the case to a jury. At the close of Balmer's case in chief, Hawkeye moved for a directed verdict. Hawkeye contended, among other things, that Balmer had failed to show that Hawkeye's actions violated public policy. Balmer responded that she did not need to prove violation of public policy because constructive discharge could stand alone as a tort with no reference to underlying illegal activities by the employer.

The district court granted Hawkeye's motion for directed verdict. The court rejected Balmer's contention that, notwithstanding her status as an employee at will, she could nevertheless maintain her suit on the theory of constructive discharge alone.

Balmer appealed, challenging the district court's ruling that constructive discharge standing alone is not an actionable tort in Iowa.

I. We review rulings granting motions for directed verdict for correction of errors at law. Iowa R.App. P. 4; *Lawrence v. Grinde*, 534 N.W.2d 414, 418 (Iowa 1995). When reviewing the ruling, we view the evidence in the same light as the district court to determine whether the

evidence generated a jury question. *Toney v. Casey's Gen. Stores, Inc.,* 460 N.W.2d 849, 852 (Iowa 1990). In ruling on such motions, the district court must first decide whether the nonmoving party has presented substantial evidence on each element of the claim. *Kurth v. Van Horn,* 380 N.W.2d 693, 695 (Iowa 1986). Evidence is substantial if a jury could reasonably infer a fact from the evidence. *Johnson v. Interstate Power Co.,* 481 N.W.2d 310, 317–18 (Iowa 1992). If the evidence is not substantial, a directed verdict is appropriate. *Id.* at 318.

**II.** Balmer argues the district court erred when it concluded constructive discharge alone is not an actionable tort. Before addressing her argument, we think it would be helpful to briefly review our law regarding employment at will, a status Balmer had until April 1996, at which time she claims she was forced to quit.

█ In Iowa an employer may discharge an at-will employee at any time, "for any *lawful* reason, that is, a reason that is not contrary to public policy." *Lockhart v. Cedar Rapids Community Sch. Dist.,* 577 N.W.2d 845, 846 (Iowa 1998). The parties can modify the employment-at-will relationship by contract created through an employer's handbook or policy manual. *Huegerich v. IBP, Inc.,* 547 N.W.2d 216, 219 (Iowa 1996). There is no record evidence of a contract created through an employer's handbook or policy manual. Nor is there any record evidence establishing a violation of public policy. Balmer, however, insists such lack of proof is irrelevant because a constructive discharge is actionable in itself.

█ **III.** In general, employment relationships are terminated by resignation or discharge. *Turner v. Anheuser–Busch, Inc.,* 7 Cal.4th 1238, 32 Cal.Rptr.2d 223, 876 P.2d 1022, 1025 (1994). An employee voluntarily severs the relationship by resigning; the employer does so by discharging the employee. *Id.*

█ As one court aptly explained,

[a]ctual discharge carries significant legal consequences for employers, including possible liability for wrongful discharge. In an attempt to avoid liability, an employer may refrain from actually firing an employee, preferring instead to engage in conduct causing him or her to quit. The doctrine of constructive discharge addresses such employer-attempted "end runs" around wrongful discharge and other claims requiring employer-initiated terminations of employment.

*Id.* Simply put, courts over the years have attempted to prevent employers' "end runs" around the law by casting an employee's quitting as involuntary:

> Although the employee may say, "I quit," the employment relationship is actually severed involuntarily by the employer's acts, against the employee's will. As a result, a constructive discharge is legally regarded as a firing rather than a resignation.

*Turner,* 32 Cal.Rptr.2d 223, 876 P.2d at 1025. Constructive discharge therefore provides a mechanism to avoid the technical requirement that wrongful discharge be based on an employer-initiated discharge.

Constructive discharge was first recognized by the federal courts. *See, e.g., Sure–Tan, Inc. v. NLRB,* 467 U.S. 883, 890, 894, 104 S.Ct. 2803, 2808, 2810, 81 L.Ed.2d 732, 742, 744 (1984) (applying constructive discharge in federal cases brought under section 8(a)(3) of the National Labor Relations Act (29 U.S.C. § 158(a)(3))); *Stetson v. NYNEX Serv.,* 995 F.2d 355, 361 (2d Cir.1993) (applying constructive discharge in employment discrimination cases brought under Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e)). State courts have since generally followed the federal courts in recognizing constructive discharge in the context of discrimination and wrongful discharge cases. *See, e.g., Slack v. Kanawha County Hous.,* 188 W.Va. 144, 423 S.E.2d 547, 556–

58 (1992) (collecting and analyzing federal and state cases).

Constructive discharge arises "when the employer deliberately makes an employee's working conditions so intolerable that the employee is forced into an involuntary resignation." *First Judicial Dist. Dep't of Correctional Servs. v. Iowa Civil Rights Comm'n*, 315 N.W.2d 83, 87 (Iowa 1982). To establish constructive discharge, the plaintiff must show that the " 'working conditions would have been so difficult or unpleasant that a reasonable person in the employee's position would be compelled to resign.' " *Id.* (quoting *Bourque v. Powell Elec. Mfg. Co.*, 617 F.2d 61, 65 (5th Cir.1980)).

We have considered the concept of constructive discharge in the context of statutory claims of wrongful discharge. *See Sievers v. Iowa Mut. Ins. Co.*, 581 N.W.2d 633, 639 (Iowa 1998) (claim brought under the Age Discrimination in Employment Act (29 U.S.C. §§ 621–34)); *Haberer v. Woodbury County*, 560 N.W.2d 571, 575–77 (Iowa 1997) (claim brought under deputy county sheriff's civil service statute, Iowa Code chapter 341A); *First Judicial Dist.*, 315 N.W.2d at 86–89 (applying constructive discharge in analyzing civil rights claim brought under Iowa's civil rights statute, Iowa Code chapter 601A (now chapter 216A)). We have also considered the concept of constructive discharge in the context of a common-law claim of wrongful discharge. *See Reihmann v. Foerstner*, 375 N.W.2d 677, 683–84 (Iowa 1985) (claim grounded on intentional infliction of emotional distress and intentional interference with plaintiff's employment contract). In none of these cases, however, was the plaintiff successful in establishing a constructive discharge under the facts of the case.

**IV.** We have never addressed the issue whether constructive discharge, standing alone, is an actionable tort. Other courts, however, that have addressed the issue have rejected this notion. For example, in *Turner*, the court noted:

> Standing alone, constructive discharge is neither a tort nor a breach of contract, but a doctrine that transforms what is ostensibly a resignation into a firing. Even after establishing constructive discharge, an employee must independently prove a breach of contract or tort in connection with employment termination in order to obtain damages for wrongful discharge.

32 Cal.Rptr.2d 223, 876 P.2d at 1030. The court went on to explain that, if the plaintiff fails to specifically identify statutory or constitutional policy that would be thwarted by the plaintiff's alleged discharge, his or her cause of action is doomed. *Id.* at 1033.

Similarly in *Vagts v. Perry Drug Stores, Inc.*, the Michigan Court of Appeals held that a

> constructive discharge is not itself a cause of action, although it is routinely alleged as a separate count in complaints for wrongful discharge. Rather, constructive discharge is a defense against the argument that no suit should lie in a specific case because the plaintiff left the job voluntarily. Thus, an underlying cause of action is needed where it is asserted that a plaintiff did not voluntarily resign but was instead constructively discharged.

204 Mich.App. 481, 516 N.W.2d 102, 104 (1994) (citations omitted); *see also Jacobson v. Parda Fed. Credit Union*, 457 Mich. 318, 577 N.W.2d 881, 882 n.9 (1998) (holding that constructive discharge is not, itself, a cause of action, but rather a defense to a claim that the employee voluntarily left employment).

Other courts have reached similar conclusions. *See, e.g., Seery v. Yale–New Haven Hosp.*, 17 Conn.App. 532, 554 A.2d 757, 761 (1989) (holding that "[a] constructive discharge in and of itself will not entitle an at-will employee to prevail on an action" alleging wrongful discharge in violation of public policy "because the employee must

still prove that the dismissal, in whatever form, occurred for a reason violating public policy").

 We agree with the reasoning of these courts. Implicit in this reasoning is that a constructive discharge is actionable only when an express discharge would be actionable in the same circumstances. Therefore, the mere allegation that a discharge is constructive does not convert a nonactionable discharge of an at-will employee into an actionable tort. Something more is needed. What is needed additionally is an accompanying claim that the discharge was the result of illegal conduct such as the violation of public policy or statutory law or breach of a unilateral contract of employment created through an employer's handbook or policy manual.

Here, the district court did not err when it concluded that, without such an accompanying claim, it made no difference whether Hawkeye expressly fired Balmer or coerced her into resigning. In neither circumstance—express or constructive discharge—did she have a cognizable cause of action. Her claim of constructive discharge, standing alone, is not an actionable tort.

Although we have not addressed all of Balmer's contentions, we have considered them. Those we have not addressed either lack merit or were not preserved for our review.

**AFFIRMED.**

† LARSON, J., taking no part.

* Senior judge assigned by order pursuant to