# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 01-3443

_____

| | | |
|---|---|---|
| Shawn C. Jeanes; Wayne Mains, | * | |
| | * | |
| Plaintiffs - Appellees, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Southern District of Iowa. |
| ALLIED Life Insurance Company, | * | |
| | * | |
| Defendant - Appellant. | * | |

_____

Submitted:  May 14, 2002

Filed:  August 23, 2002

_____

Before BOWMAN, LOKEN and BYE, Circuit Judges.

_____

LOKEN, Circuit Judge.

Shawn C. Jeanes and Wayne Mains resigned as insurance agents and regional directors for ALLIED Life Insurance Company, an Iowa insurer.  Jeanes and Mains then filed this diversity action, alleging they were forced to resign after discovering that ALLIED failed to tell them of an improper increase in the fees charged to universal life policyholders.  A trial to the district court resulted in a judgment awarding Jeanes and Mains damages totaling more than $1.3 million on their claims of breach of contract and violation of the Iowa Wage Payment Collection Law. ALLIED appeals.  The district court's decision is reported at Jeanes v. Allied Life Ins. Co., 168 F. Supp. 2d 958 (S.D. Iowa 2001).

Iowa law governs this diversity case. Under Iowa law, when a breach of contract claim has been tried to the court, the court's findings are binding if supported by substantial evidence; our review is then limited to correcting errors of law. See Iowa R. App. P. 6.4, 6.14(6)(a) (Supp. 2002); Wolf v. DaCom, Inc., 499 N.W.2d 728, 730 (Iowa App. 1993). We review the evidence in the light most favorable to the trial court's opinion, Van Oort Constr. Co. v. Nuckoll's Concrete Serv., Inc., 599 N.W.2d 684, 689 (Iowa 1999), and the district court's interpretation of state law *de novo,* Home Ins. Co. v. Aetna Ins. Co., 236 F.3d 927, 929 (8th Cir. 2001). In this case, we conclude that the district court erred in applying the doctrine of constructive discharge to appellees' breach of contract damage claims, and in awarding prejudgment interest for the period prior to the assertion of plaintiffs' Wage Payment Collection Law claims. Accordingly, we reverse in part and affirm in part.

## I. The Breach of Contract Claims.

In separate agency contracts, ALLIED appointed Jeanes and Mains as California-based independent agents authorized to solicit applications for ALLIED policies in their respective territories, and as regional directors (formerly called managing general agents) authorized to supervise and encourage life insurance sales by assigned ALLIED Property/Casualty agents. Jeanes and Mains received commissions on premiums paid on ALLIED policies issued through them, and override commissions on premiums paid on ALLIED policies issued through their assigned agents. At issue in this lawsuit is paragraph 3(b) of the agency contracts, which provided:

> Good Faith: Both parties will, at all times, act in good faith when dealing with our policyholders and each other. You will not make any actions that suggest or encourage any policyholder to surrender or lapse any policy or to cease premium payments. Any such activity gives us [ALLIED] the right to terminate this Agreement for cause.

-2-

In January 1994, ALLIED decided to increase by two percent the cost-of-insurance (COI) fees charged on outstanding universal life policies. After the increase was implemented in September, ALLIED charged COI fees at the new rate as each policy reached its anniversary date. The increased fee was not discernible on the policies' annual statements, and ALLIED did not otherwise disclose the increase to its universal life policyholders. During a February 1995 meeting, ALLIED informed regional directors of the fee increase but did not explain the reason for the increase. In response to concerns that the fee increase might be invalid, ALLIED discontinued collecting it in April 1995 and eventually rolled back the additional charges by increasing the interest paid to policyholders on the affected policies.

In June 1997, Jeanes and Mains were told by another ALLIED regional director that the two percent COI fee increase had been imposed to maximize executive bonuses. After contacting an attorney handling a class action lawsuit against another life insurer, they resigned as ALLIED agents and regional directors on January 9, 1998, expressing concern that "unresolved issues" and "Senior Management's standards for operation" could jeopardize their integrity as agents and their relationships with clients and other agents. This lawsuit followed. Following a bench trial, the district court ruled in favor of Jeanes and Mains on their breach of contract claims and awarded damages of $1,164,663.25 on those claims.

Our task on appeal is simplified by noting at the outset what is *not* at issue. First, the district court determined that ALLIED breached the universal life policies by imposing the two percent COI fee increase because the policies provide that COI fees will be determined "based on [ALLIED's] expectations as to future mortality experience." The court did not find that the increases were motivated by a desire to increase executive bonuses, as Jeanes and Mains argued, but it did find that the reasons put forward by ALLIED trial witnesses were not limited to the company's expectations as to mortality experience, as the policies required. These findings and conclusions are not challenged by ALLIED on appeal.

-3-

Second, the district court concluded that ALLIED breached the express good faith provision in paragraph 3(b) of the agency contracts:

> In this case, good faith would certainly include an obligation on the behalf of Allied to make changes in the cost of insurance known to its policyholders. Good faith would also encompass an obligation by Allied to be honest with its Regional Directors so that they are able to be honest with the company's clientele. It is clear from the record now before the Court that Allied did not raise the COI for mor[t]ality experience. It is also clear that the true reason for the increase, be it to maximize executive bonuses or to cover new legislative requirements, was not revealed and was not made known to policyholders and to Messrs. Jeanes and Mains.

168 F. Supp. 2d at 978. These conclusions may be problematic because they were made without considering whether ALLIED's universal life policies obligated the company to disclose to policyholders either the fact of the COI fee increase, or the reasons for that increase. In most States, the *implied* covenant of good faith and fair dealing "is a method to fill gaps in a contract" and may not be used to impose duties that the contract's express terms do not require. Taylor Equip., Inc. v. John Deere Co., 98 F.3d 1028, 1032 (8th Cir. 1996) (quotation omitted) (applying South Dakota law). The district court did not analyze whether the Supreme Court of Iowa would adopt this limited definition of bad faith in resolving contract performance issues *and* apply it in construing an *express* good faith covenant such as paragraph 3(b). But in any event, ALLIED has not raised the issue on appeal. Therefore, we assume without deciding that the district court correctly found a breach of paragraph 3(b).

However, to prevail on their breach of contract claims under Iowa law, Jeanes and Mains must prove they suffered damages as a result of ALLIED's breach. Molo Oil Co. v. River City Ford Truck Sales, Inc., 578 N.W.2d 222, 224 (Iowa 1998). At trial, Jeanes and Mains failed to prove that any client lapsed or terminated a universal life policy because of the COI fee increase before Jeanes and Mains terminated the

-4-

agency contracts. Thus, Jeanes and Mains did not prove that they lost commissions due to ALLIED's breach. Rather, their damage claims were based upon the loss of future commission income resulting from their voluntary termination of their agency relationships with ALLIED. The district court upheld this damage theory by invoking the doctrine of constructive discharge under Iowa law. We disagree.

Under Iowa law, a constructive discharge occurs "when the employer deliberately makes an employee's working conditions so intolerable that the employee is forced into an involuntary resignation." First Judicial Dist. Dep't of Corr. Servs. v. Iowa Civil Rights Comm'n, 315 N.W.2d 83, 87 (Iowa 1982). The Iowa courts have limited the doctrine to claims of wrongful termination of employment. When an employer has forced an employee to quit, rather than firing him, constructive discharge "provides a mechanism to avoid the technical requirement that wrongful discharge be based on an employer-initiated discharge." Balmer v. Hawkeye Steel, 604 N.W.2d 639, 641 (Iowa 2000). However, constructive discharge is not a free-standing cause of action. "Even after establishing constructive discharge, an employee must independently prove a breach of contract or tort *in connection with employment termination* in order to obtain damages for wrongful discharge." Id. at 642 (emphasis added, quotation omitted).

In this case, Jeanes and Mains did not resign to avoid imminent improper termination. ALLIED did not want them to resign, its breach of the good faith covenant was not intended to force them to resign, and the fact that Jeanes and Mains would give up lucrative agency relationships was not a foreseeable consequence of ALLIED's decision to conceal from them the reasons for the rescinded COI fee increase. "[D]amages are not recoverable for injury that is too remote from the conduct of the defendant constituting his breach of duty." 5 Corbin on Contracts § 997 (1964). In these circumstances, the district court's use of constructive discharge to justify the award of post-termination damages for a prior unrelated breach of the agency contracts was an unwarranted extension of Iowa law.

-5-

Moreover, even if the Iowa courts would apply the doctrine of constructive discharge in this novel manner, we conclude that Jeanes and Mains failed to prove they were constructively discharged. The test for constructive discharge is rigorous. "The conditions giving rise to the resignation must be sufficiently extraordinary and egregious to overcome the normal motivation of a competent, diligent, and reasonable employee to remain on the job to earn a livelihood and to serve his or her employer." Haberer v. Woodbury County, 560 N.W.2d 571, 575 (Iowa 1997) (quotation omitted). The Supreme Court of Iowa recently surveyed its prior decisions and noted that no plaintiff has succeeded "in establishing a constructive discharge under the facts of the case." Balmer, 604 N.W.2d at 642. Here, ALLIED rescinded the COI fee increase after a few months and refunded the increased charges. Over two years later, Jeanes and Mains heard that the increases were imposed to fatten executive compensation -- a rumor they were unable to prove at trial. They waited six months longer -- in order to collect their 1997 agent bonuses -- and then resigned, claiming ALLIED's lack of candor forced them to terminate the relationships. We are not convinced that any reasonable person would feel *compelled* to terminate an independent agency relationship in these circumstances. "The proper focus is on whether the resignation was coerced, not whether it was simply one rational option for the employee." Haberer, 560 N.W.2d at 575 (quotation omitted). Though Jeanes and Mains were within their rights in terminating the agency contracts on account of ALLIED's breach, they were not forced to resign.

For the foregoing reasons, we reverse the district court's award of damages for ALLIED's breach of paragraph 3(b) of the agency contracts.

### III. The Wage Payment Collection Law Claims.

Shortly after Jeanes and Mains terminated their agency contracts and filed this action, ALLIED ceased commission payments. Jeanes and Mains then amended their complaint to allege that the commissions were clearly due and therefore the refusal

to pay them violated the Iowa Wage Payment Collection Law, Iowa Code Ch. 91A. ALLIED paid Jeanes and Mains the withheld amounts a few weeks before trial. The district court concluded that ALLIED had violated the Wage Payment Collection Law and awarded Jeanes and Mains liquidated damages of $156,056.36, prejudgment interest, court costs, and attorney fees attributable to those claims.[1]

The Iowa Wage Payment Collection Law is designed "to facilitate the collection of wages owed to employees." Phipps v. IASD Health Servs. Corp., 558 N.W.2d 198, 201 (Iowa 1997). On appeal, ALLIED argues, as it did in the district court, that Chapter 91A does not apply because Jeanes and Mains were independent contractors, not employees. Applying the common law test of Miller v. Component Homes, Inc., 356 N.W.2d 213, 216-17 (Iowa 1984), the district court held that Jeanes and Mains were employees because of the amount of control ALLIED exerted over its regional directors.

If the common law test for distinguishing employees from independent contractors were controlling, we would have great difficulty affirming the district court's conclusion that these independent insurance agents were employees of ALLIED. See Birchem v. Knights of Columbus, 116 F.3d 310, 313 (8th Cir. 1997), and cases cited. However, we conclude the common law test is not controlling

---

[1]The Iowa Wage Payment Collection Law applies to persons "employed in this state." Iowa Code § 91A.2(3). We have some doubt whether the Act applies to wages and commissions owed by an Iowa employer to persons whose services were performed outside the State, such as Jeanes and Mains. See Holiday Inns Franchising, Inc. v. Branstad, 537 N.W.2d 724, 730-31 (Iowa 1995) (Iowa Franchise Act does not apply to franchisees operating outside the State). However, Iowa courts apply Iowa law unless a party pleads and proves the applicability of foreign law. Penn. Life Ins. Co. v. Simoni, 641 N.W.2d 807, 810-11 (Iowa 2002). Thus, ALLIED has failed to preserve this issue.

because a 1985 amendment to the Wage Payment Collection Law added the following sentence to the definition of "employee" in § 91A.2(3):

> Employee also includes a commission salesperson who takes orders or performs services on behalf of a principal and who is paid on the basis of commissions but does not include persons who purchase for their own account for resale.

1985 Iowa Acts Ch. 119. The district court downplayed the significance of this relatively recent amendment by stating, "While the statute includes commissioned salespersons, it does not include under its ambit independent contractors." 168 F. Supp. 2d at 991. But the court cited no authority for this assertion, which is contrary to the plain meaning of the amendment. The added sentence distinguishes between manufacturers' sales representatives and independent distributors, two types of salespersons who are frequently independent contractors, by including the former under the statute's protections, but excluding the latter. The text of the amendment provides no basis for limiting the statute's coverage to commission salespersons who are also employees. Moreover, the Iowa Legislature could rationally conclude that commission salespersons have the same need for the protections of the statute as wage-earning employees, even if the commission salespersons are technically independent contractors. In these circumstances, lacking contrary guidance from the Supreme Court of Iowa, we will enforce amended § 91A.2(3) as written. Accordingly, Jeanes and Mains as commission salespersons were "employees" for purposes of the Act, whether or not they were common law employees of ALLIED.

ALLIED next argues that plaintiffs' claims for liquidated damages for commissions earned prior to February 12, 1999 are barred by the two-year limitations period applicable to Wage Payment Collection Law claims, because Jeanes and Mains did not amend their complaint to include these claims until February 12, 2001. This contention is foreclosed by Andus v. Sabre Communications Corp., 554 N.W.2d 868,

873-74 (Iowa 1996), where the Supreme Court of Iowa held that continuously accruing commissions are a "continuous, open, current account" for purposes of Iowa Code § 614.5, and therefore the two-year statute of limitations is tolled until the last commission was earned. Here, since Jeanes and Mains accrued some commissions after February 1999, no part of their claims for liquidated damages was time-barred.

Finally, ALLIED argues the district court erred in awarding prejudgment interest on the Wage Payment Collection Law claims for the two years prior to the assertion of those claims on February 12, 2001. We agree. The applicable Iowa statute provides: "Interest shall be allowed on all money due on judgments and decrees of courts at the rate of ten percent per year . . . . The interest shall accrue from the date of commencement of the action." Iowa Code § 535.3(1). Here, the Wage Payment Collection Law claims do not relate back to the filing of the original complaint because they concern post-litigation conduct of ALLIED that was unrelated to ALLIED's pre-termination conduct upon which the initial claims were based. Compare Beeck v. Aquaslide 'N' Dive Corp., 350 N.W.2d 149, 168-69 (Iowa 1984). Thus, prejudgment interest may only be awarded from February 12, 2001.

The judgment of the district court is reversed insofar as it (i) awards damages on count one of plaintiffs' complaint of $570,977.99 for Jeanes and $593,685.26 for Mains; and (ii) awards prejudgment interest as to count seven of plaintiffs' complaint prior to February 12, 2001. The judgment is otherwise affirmed, and the case is remanded for further proceedings not inconsistent with this opinion.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.