CRIPE, INC. d/b/a D.C. Garage Doors,
Appellant–Defendant,

v.

James L. CLARK, Appellee–Plaintiff.

No. 50A04–0502–CV–63.

Court of Appeals of Indiana.

Sept. 28, 2005.

Jere L. Humphrey, Kizer & Neu, LLP, Plymouth, for Appellant.

Roy D. Burbrink, Burbrink & Clemons, P.C., Plymouth, for Appellee.

## OPINION

BAILEY, Judge.

### Case Summary

In this interlocutory appeal, Appellant–Defendant Cripe, Inc. d/b/a D.C. Garage Doors ("Cripe") appeals the trial court's denial of its motion to dismiss the complaint filed by James L. Clark ("Clark") for retaliatory discharge. We reverse and remand.

### Issue

Cripe raises one issue, which we restate as whether the trial court erred by denying its motion to dismiss because Clark voluntarily terminated his employment

with Cripe and, as a consequence, has failed to state a claim for retaliatory discharge upon which relief may be granted.

## Facts and Procedural History

The relevant facts, as set forth in the complaint at issue, follow. On or about January 29, 2002, Cripe hired Clark as an installer and service technician of garage doors. From the date of his hire, Clark— an at-will employee [1]—was supervised by Dennis Cripe ("Dennis") and Jim Brown ("Brown"). A few months after Clark began his employment with Cripe,[2] Dennis assigned him to drive a Chevrolet van. This van lacked operating turn signals, at least one brake light, operating warning-hazard lights, and an interior center rear-view mirror. The van also had severely worn tires and brakes and "loose exterior rear-view mirrors." Appellant's App. at 5. Clark informed Dennis and Brown of the defective condition of the Chevrolet van and was assured that necessary repairs would be made. Except for an attempted repair of the front brakes, however, no such repairs were completed. At some point, one of Clark's co-workers, who is neither skilled nor certified to make brake repairs, attempted to repair the van.

In June of 2003, Brown directed Clark to drive the Chevrolet van to the Cripe facility located in Knox, Indiana. Upon his arrival at the Knox facility, Clark was instructed to load the van with materials, the bulk of which exceeded the loading capacity of the vehicle. Accordingly, Clark was required to drive a "F350 diesel duel-wheeled pick-up truck," with a trailer attached. *Id.* at 6. From a previous experience with this truck, Clark knew that its brakes had been defective. When Clark inquired about the present condition of the brakes, he was directed to drive the truck irrespective of whether the brakes had been repaired. In addition, the trailer that Clark was required to haul behind the truck had a flat tire, no operating harness for turn signals or brake lights, and a license plate that belonged to another vehicle. Before he departed from the Knox facility, Dennis advised Clark to "just be careful and don't drive fast." *Id.*

Because of the truck's faulty brakes, Clark was unable to safely stop the truck and trailer at the intersection of U.S. Highways 35 and 6 and, instead, the vehicles "veered onto the right-hand berm" and came to rest in an adjacent ditch. *Id.* After an unsuccessful attempt to use the in-cab radio, Clark continued driving the truck and trailer and encountered "several other near accidents (i.e., near rear-end collisions with vehicles in front of the [truck] due to the defective brakes, and near rear-end collisions to the trailer from following vehicles due to the trailer's defective brake lights)." *Id.* at 7. Eventually, Clark returned the vehicles to the Knox facility and reported the hazardous conditions.

Approximately one week later, Clark was assigned to drive a "1996 G30 Chevrolet utility van" for a certain service job in Plymouth, Indiana. *Id.* This utility van had been serviced on numerous occasions for sudden losses of power. Notwithstanding the attempted repairs, however, Clark had noticed that "the same loss of power

---

1. The duration of Clark's employment with Cripe was indefinite. We have previously held that "[a]bsent a set term of employment, an employment relationship is at will." *McGarrity v. Berlin Metals, Inc.,* 774 N.E.2d 71, 76 (Ind.Ct.App.2002), *trans. denied.*

2. Clark's complaint provides: "In the early Spring of 2001, after working for a few months ... Clark was assigned ... to drive a Chevrolet van." Appellant's App. at 5. Because Clark did not commence his employment with Cripe until January 29, 2002, we will presume that Clark was assigned to drive the van in the spring of 2002.

problem persisted." *Id.* Indeed, in June of 2003, while Clark was driving the utility van, it lost power and stalled in the middle of a busy intersection, nearly resulting in a severe collision with oncoming traffic.

Subsequent to this latter incident, Clark questioned Dennis about the safety of the motor vehicles that had been assigned to him, but Dennis "refused to provide safe vehicles to Clark." *Id.* at 8. In response, "Clark terminated his employment [with Cripe] on or about July 21, 2003." *Id.*

On October 20, 2004, Clark filed a complaint against Cripe alleging that he had been retaliatorily discharged. On November 3, 2004, Cripe filed a motion to dismiss Clark's complaint, pursuant to Indiana Trial Rule 12(B)(6). After conducting a hearing, the trial court entered an order denying Cripe's motion to dismiss, which it certified for interlocutory appeal on January 12, 2005. We accepted jurisdiction of this appeal on March 7, 2005. It is from the denial of its Rule 12(B)(6) motion to dismiss that Cripe now appeals.

### Discussion and Decision

#### I. Standard of Review

On appeal, Cripe argues that the trial court erroneously denied its motion to dismiss the Complaint under Indiana Trial Rule 12(B)(6).[3] The standard of review of a trial court's grant or denial of a motion to dismiss for failure to state a claim is de novo. *Sims v. Beamer*, 757 N.E.2d 1021, 1024 (Ind.Ct.App.2001). We do not defer at all to the trial court's decision because

deciding a motion to dismiss based upon failure to state a claim involves a pure question of law. *Id.* That is, it does not require reference to extrinsic evidence, the drawing of inferences therefrom, nor the weighing of credibility for its disposition. *Bader v. Johnson*, 732 N.E.2d 1212, 1216 (Ind.2000). The grant or denial of a motion to dismiss turns solely on the legal sufficiency of the claim and does not require determinations of fact. *Sims*, 757 N.E.2d at 1024.

Because an Indiana Trial Rule 12(B)(6) motion to dismiss tests the legal sufficiency of a claim, and not the facts supporting it, a complaint may not be dismissed on the basis that it fails to state a claim upon which relief may be granted unless it appears to a certainty, on the face of such complaint, that the complaining party is not entitled to any relief. *McQueen v. Fayette County Sch. Corp.*, 711 N.E.2d 62, 65 (Ind.Ct.App.1999), *trans. denied.* In ruling upon a motion to dismiss for failure to state a claim, the trial court is required to view the complaint in a light most favorable to the nonmoving party, with every reasonable inference construed in the nonmovant's favor. *Id.* The trial court may only look to the complaint, and well-pleaded material must be taken as admitted. *Id.; see also Crosson v. Berry*, 829 N.E.2d 184, 189 (Ind.Ct.App.2005).

#### II. Analysis

In the complaint at issue, while Clark admits that he resigned his position with

---

**3.** Indiana Trial Rule 12(B)(6) provides that:
 Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or third-party claim, shall be asserted in the responsive pleading thereto if one is required; except that at the option of the pleader, the following defenses may be made by motion:

 \* \* \* \* \* \*

 (6) Failure to state a claim upon which relief can be granted, which shall include

failure to name the real party in interest under Rule 17 . . . .

Cripe, he alleges that Cripe retaliatorily discharged him. In particular, Clark asserts that he was constructively discharged from his employment when Cripe refused to provide him with a safe motor vehicle. On appeal, Cripe argues that the complaint fails to state a claim upon which relief can be granted because Indiana does not recognize the doctrine of constructive discharge in the context of a claim for a retaliatory discharge. We find Cripe's argument to be persuasive.

▇ Indiana follows the doctrine of employment at will, under which an employer may discharge an at-will-employee, such as Clark, for any cause or no cause at all without incurring liability. *See Wilmington v. Harvest Ins. Co.*, 521 N.E.2d 953, 955 (Ind.Ct.App.1988). That said, our courts have recognized three limited and strictly construed exceptions to the doctrine of "employment at will," two of which are implicated here.[4] In *Frampton v. Central Ind. Gas Co.*, 260 Ind. 249, 253, 297 N.E.2d 425, 428 (1973), for example, the Indiana Supreme Court determined that, while an employee-at-will may normally be fired for any reason, he or she does possess a cause of action for wrongful discharge when an employer retaliates for the exercise of a statutorily conferred right, such as the filing of a worker's compensation claim.

Subsequently, in *McClanahan v. Remington Freight Lines, Inc.*, 517 N.E.2d 390, 393 (Ind.1988), the Court recognized a "separate but tightly defined exception to the employment at will doctrine" when an employer discharges an employee for refusing to commit an illegal act for which the employee would be personally liable.

There, an at-will-employee was informed "he was no longer employed" with the company after he had refused to drive an overweight truck through Illinois. *Id.* at 391. In fashioning this "tightly defined exception," the *McClanahan* Court noted:

> If [employee] had chosen to drive his overweight truck through Illinois, he would have been personally liable for violation of Illinois law and subject to a fine. Furthermore, he would have been jointly and severally liable for the cost of repairing any damage to the highway or highway structures caused by his overweight vehicle.
>
> Depriving [employee] of any legal recourse under these circumstances would encourage criminal conduct by both the employee and the employer. Employees faced with the choice of losing their jobs or committing an illegal act for which they might not be caught would feel pressure to break the law simply out of financial necessity. Employers, knowing the employees' susceptibility to such threats and the absence of civil retribution, would be prompted to present such an ultimatum.

*Id.* at 393.

In the present case, in his complaint, Clark alleged that Cripe supplied him with three unsafe vehicles and, further, that when he asked the company to provide him with a safe vehicle, Cripe refused. Thereafter, Clark "terminated his employment." Appellant's App. at 8.

Assuming arguendo that Clark's allegations are sufficient to demonstrate that, by requiring him to drive unsafe vehicles, Cripe forced Clark to commit an illegal act for which he could be subjected to person-

---

4. In *Orr v. Westminster Village North, Inc.*, 689 N.E.2d 712, 718 (Ind.1997), the Court determined that, if an employee establishes that "adequate independent consideration" supports the employment contract, the parties are considered to have intended to establish a relationship in which the employer may terminate the employee only for good cause. This exception, however, does not apply to the present dispute.

al liability,[5] these allegations are insufficient to show that Cripe discharged Clark. Rather, Clark resigned.

In his complaint, Clark attempts to circumvent this reality by arguing that Cripe's action of failing to provide him with a safe vehicle was tantamount to a "constructive discharge." Initially, we question whether the constructive discharge doctrine—which transforms what is ostensibly a resignation into a firing—may even be used as a defense that an at-will-employee can raise in the context of a common law retaliatory discharge claim brought against his or her employer. Indeed, the practical effect of an employee's tender of his or her resignation means that the employer will not have to retaliate against the employee by discharging him or her. Put another way, we are not convinced that a constructive retaliatory discharge fits within the ambit of the narrowly-drawn exceptions to the employee-at-will doctrine. Rather, it seems that, were we to apply the doctrine of constructive discharge to demonstrate a retaliatory discharge, we would be overly extending that which was intended by the narrowly-defined exceptions.

 Nevertheless, even assuming that the constructive discharge doctrine applies in the context of a retaliatory discharge, the allegations contained in the complaint at issue are insufficient to demonstrate a constructive discharge. A constructive discharge occurs when an employer purposefully creates working conditions, which are so intolerable that an employee has no other option but to resign. *See, e.g., Haubry v. Snow,* 106 Wash.App. 666, 31 P.3d 1186, 1192–93 (2001) (recognizing that to establish a claim for constructive discharge, a claimant must show: (1) that the employer deliberately made the working conditions intolerable for the claimant; (2) that a reasonable person in the claimant's position would be forced to resign; (3) that the claimant resigned solely because of the intolerable conditions; and (4) that the claimant suffered damages). Before the employment situation will be deemed intolerable, however, the adverse working conditions must be unusually "aggravated" or amount to a "continuous pattern" of negative treatment. *Id.* The essence of the test is whether, under the totality of the circumstances, the working conditions are so unusually adverse that a reasonable employee in plaintiff's position " 'would have felt compelled to resign.' " *Slack v. Kanawha County Housing Redevelopment Auth.,* 188 W.Va. 144, 423 S.E.2d 547, 556 (1992) (quoting *Calhoun v. Acme Cleveland Corp.,* 798 F.2d 559, 561 (1st Cir.1986)) (discussing Massachusetts law). Put another way, the standard by which a constructive discharge is generally determined is an objective one: "whether a reasonable person faced with the allegedly intolerable employer actions or conditions of employment would have no reasonable alternative except to quit." *Turner v. Anheuser–Busch, Inc.,* 7 Cal.4th 1238, 32 Cal.Rptr.2d 223, 228, 876 P.2d 1022 (1994), *overruled on other grounds by Romano v. Rockwell Inter-*

---

**5.** For example, Indiana Section 9–19–3–1 provides:

> A motor vehicle other than a motorcycle or motor-driven cycle, when operated upon a highway, must be equipped with brakes adequate to control the movement of and to stop and hold the vehicle. The brakes must include two (2) separate means of applying the brakes, each of which means must apply the brakes to at least two (2) wheels. If these two (2) separate means of applying the brakes are connected in any way, the means must be constructed so that failure of one (1) part of the operating mechanism does not leave the motor vehicle without brakes on at least two (2) wheels.

*nat., Inc.*, 14 Cal.4th 479, 59 Cal.Rptr.2d 20, 926 P.2d 1114 (1996).

■ In the present case, the averments contained in Clark's complaint are insufficient to allege that Cripe purposefully created a working condition *so intolerable* that Clark had no choice but to resign. *See, e.g., Tutman v. WBBM–TV, Inc.*, 209 F.3d 1044, 1050 (7th Cir.2000) (recognizing that the doctrine of constructive discharge is limited to egregious cases, such as, for example, where an employee is subjected to threats or repeated racist taunting), *cert. denied*, 531 U.S. 1078, 121 S.Ct. 777, 148 L.Ed.2d 675 (2001). Rather, the allegations merely assert that Cripe refused to provide Clark—an installer and service technician of garage doors—with a safe vehicle and that, as a consequence, Clark resigned. Accordingly, the complaint in dispute fails to state a claim upon which relief can be granted. As such, the trial court erred by denying Cripe's motion to dismiss Clark's complaint.

For the foregoing reasons, we reverse the trial court's denial of Cripe's motion to dismiss Clark's complaint and remand for judgment consistent with this opinion.

Reversed and remanded.

FRIEDLANDER, J., concurs.

ROBB, J., dissents with separate opinion.

ROBB, Judge, dissenting.

I respectfully dissent, as I believe Indiana should recognize the doctrine of constructive discharge as a defense that an at-will-employee can raise in the context of a common law retaliatory discharge claim brought against his employer.

The majority correctly notes that Indiana follows the doctrine of employment-at-will. *Wior v. Anchor Indus., Inc.*, 669 N.E.2d 172, 175 (Ind.1996). Under this doctrine, an employer can discharge an at-will-employee for any cause or no cause at all without incurring liability. *Wilmington v. Harvest Ins. Companies*, 521 N.E.2d 953, 955 (Ind.Ct.App.1988). However, the employment-at-will doctrine has come under attack and has slowly been eroded by Indiana courts adopting several exceptions to it.

Our supreme court first recognized an exception to the employment-at-will doctrine in *Frampton v. Central Indiana Gas Co.*, 260 Ind. 249, 297 N.E.2d 425 (1973). In that case, the court held that an employee discharged for filing a worker's compensation claim could bring a claim for retaliatory discharge. *Id.* at 428. A second exception to the employment-at-will doctrine adopted by our supreme court provides that if an employee can establish that "adequate independent consideration" supports his employment contract, the court will generally conclude that the parties intended to establish a relationship in which the employer may terminate the employee only for good cause. *Orr v. Westminster Village North, Inc.*, 689 N.E.2d 712, 718 (Ind.1997) (citing *Romack v. Public Serv. Co.*, 511 N.E.2d 1024, 1026 (Ind.1987) (adopting in substantial part and incorporating Judge Conover's dissent in *Romack v. Public Serv. Co.*, 499 N.E.2d 768, 777 (Ind.Ct.App.1986))). An employee may also avoid the harsh results of the employment-at-will doctrine by invoking the doctrine of promissory estoppel. *Orr*, 689 N.E.2d at 718. To do so effectively, the employee must demonstrate that (1) the employer made a promise to the employee; (2) the employee relied upon that promise to his detriment; and (3) the promise otherwise fits within the Restatement (Second) of Contracts test for promissory estoppel. *Id.* (citing *Jarboe v. Landmark Community Newspapers of*

*Indiana, Inc.*, 644 N.E.2d 118, 121 (Ind. 1995)).

Of particular significance to this case is our supreme court's decision in *McClanahan v. Remington Freight Lines, Inc.*, 517 N.E.2d 390 (Ind.1988). In that case, McClanahan, who was an interstate truck driver, refused to drive his overweight truck into Illinois because it would violate Illinois law. Upon arrival at his employer's headquarters in Indiana, McClanahan was informed that he was no longer employed. McClanahan's employer pointed out that the employee manual provided that a driver's refusal to carry a load constituted a "voluntary quit." *McClanahan*, 517 N.E.2d at 391. McClanahan later filed a claim against his employer for wrongful discharge.

Based on the employee manual, which suggested that McClanahan had voluntarily quit, the court could have decided the case based on the constructive discharge doctrine. The court, however, did not do this and instead concluded that McClanahan had been fired. The court first noted that "firing an employee for refusing to commit an illegal act for which he would be personally liable is as much a violation of public policy declared by the legislature as firing an employee for filing a workmen's compensation claim." *Id.* at 393. Under these circumstances, the court determined that an exception to the employment-at-will doctrine was appropriate. *Id.* As the majority points out, in fashioning this exception the court stated:

> If McClanahan had chosen to drive his overweight truck through Illinois, he would have been personally liable for violation of Illinois law and subject to a fine. Furthermore, he would have been jointly and severally liable for the cost of repairing any damage to the highway or highway structures caused by his overweight vehicle.

> Depriving [an employee] of any legal recourse under these circumstances would encourage criminal conduct by both the employee and the employer. Employees faced with the choice of losing their jobs or committing an illegal act for which they might not be caught would feel pressure to break the law simply out of financial necessity. Employers, knowing the employees' susceptibility to such threats and the absence of civil retribution, would be prompted to present such an ultimatum.

*Id.* (citations omitted). The court ultimately held that McClanahan had stated a claim for wrongful or retaliatory discharge when he alleged that he was terminated for refusing to commit an illegal act for which he could have been personally liable. *Id.*

*McClanahan* stands for the proposition that one need not be required to break the law to retain one's employment. The law should not permit a situation where an employer requires and an employee feels he must commit illegal acts. The majority's opinion turns a blind eye to employers who require an employee to commit illegal acts, and fails to give employees who have been forced to commit illegal acts in order to retain their employment any legal recourse. Thus, I believe the majority's opinion is contrary to the policies announced by our supreme court in *McClanahan*.

Furthermore, in declining to adopt the constructive discharge doctrine, the majority's opinion ignores the fact that some employee resignations are involuntary, as I believe was the case in *McClanahan*. In doing so, the majority allows employers who wrongfully force an employee to resign to escape any sort of liability for their actions. Additionally, I also believe that a constructive discharge has the potential to be far more egregious than an express

discharge. With an express discharge, the employee is wronged in that he is fired without good cause. In a constructive discharge, although the employee is not fired, his employer may subject him to multiple abuses in an effort to make working conditions so intolerable that the employee is left with no choice but to resign. For the above reasons, I believe Indiana should adopt the doctrine of constructive discharge as a defense that an at-will-employee can raise in the context of a common law retaliatory discharge claim. In one sense, I believe *McClanahan* has already done so.

"The concept of constructive discharge first arose in federal statutory claims brought under the National Labor Relations Act." *Strozinsky v. School Dist. of Brown Deer*, 237 Wis.2d 19, 614 N.W.2d 443, 462 (2000). The United States Supreme Court had the opportunity to address such a claim in *Sure–Tan, Inc. v. N.L.R.B.*, 467 U.S. 883, 104 S.Ct. 2803, 81 L.Ed.2d 732 (1984). In that case, the Court indicated that an employer discriminates "not only when ... it directly dismisses an employee, but also when it purposefully creates working conditions so intolerable that the employee has no option but to resign—a so-called 'constructive discharge.'" *Id.* at 894, 104 S.Ct. 2803. Federal courts have since allowed a constructive discharge defense in discrimination actions brought under Title VII of the Civil Rights Act of 1964, the Age Discrimination in Employment Act of 1967, and the Americans with Disabilities Act of 1990. *Strozinsky*, 614 N.W.2d at 462.

Many states now recognize constructive discharge as a defense that an at-will-employee can raise in the context of a common law retaliatory discharge or wrongful discharge claim, and, consequently, these states permit an employee who

has not been fired to raise a retaliatory discharge claim. *See id.* at 466; *Balmer v. Hawkeye Steel*, 604 N.W.2d 639, 642 (Iowa 2000) (citing *Reihmann v. Foerstner*, 375 N.W.2d 677, 683–84 (Iowa 1985)); *Collier v. Insignia Fin. Group*, 981 P.2d 321, 326 (Okla.1999); *Bell v. Dynamite Foods*, 969 S.W.2d 847, 851 (Mo.Ct.App.1998); *Nguyen v. Technical & Scientific Application, Inc.*, 981 S.W.2d 900, 902 (Tex.App.1998); *GTE Products Corp. v. Stewart*, 421 Mass. 22, 653 N.E.2d 161, 168–70 (1995); *Turner v. Anheuser–Busch, Inc.*, 7 Cal.4th 1238, 32 Cal.Rptr.2d 223, 876 P.2d 1022, 1029–30 (1994); *Vagts v. Perry Drug Stores, Inc.*, 204 Mich.App. 481, 516 N.W.2d 102, 105 (1994); *Dalby v. Sisters of Providence in Oregon*, 125 Or.App. 149, 865 P.2d 391, 394–95 (1993); *Slack v. Kanawha County Hous. and Redevelopment Auth.*, 188 W.Va. 144, 423 S.E.2d 547, 558 (1992); *Seery v. Yale–New Haven Hosp.*, 17 Conn. App. 532, 554 A.2d 757, 761–62 (1989); *Beye v. Bureau of Nat. Affairs*, 59 Md. App. 642, 477 A.2d 1197, 1202–03 (1984), *cert. denied*, 301 Md. 639, 484 A.2d 274 (1984). *But see Whitt v. Harris Teeter, Inc.*, 359 N.C. 625, 614 S.E.2d 531 (2005), *overruling Whitt v. Harris Teeter, Inc.*, 165 N.C.App. 32, 598 S.E.2d 151 (2004); *Welsh v. Commonwealth Edison Co.*, 306 Ill.App.3d 148, 239 Ill.Dec. 148, 713 N.E.2d 679, 683 (1999) (citing *Hartlein v. Illinois Power Co.*, 151 Ill.2d 142, 176 Ill.Dec. 22, 601 N.E.2d 720, 730 (1992)) (noting that Illinois courts have found constructive discharge is not an actionable concept largely due to the Illinois Supreme Court's lack of support for the expansion of the tort of retaliatory discharge).

In addressing why an employee who has only been constructively discharged should be allowed to bring a claim for retaliatory discharge, the California Supreme Court explained that "[a]lthough the employee may say, 'I quit,' the employment relationship is actually severed involuntarily by

the employer's acts, against the employee's will. As a result, a constructive discharge is legally regarded as a firing rather than a resignation." *Turner*, 32 Cal.Rptr.2d 223, 876 P.2d at 1025. The Michigan Supreme Court has indicated that once an individual has established that he was constructively discharged, he is treated as if his employer actually fired him. *Jacobson v. Parda Fed. Credit Union*, 457 Mich. 318, 577 N.W.2d 881, 886 (1998). The court stated that in such a situation, the law would not "differentiate between employees who were constructively discharged and those who were actually discharged." *Id.*

I believe that the Wisconsin Supreme Court's reasoning in *Strozinsky*, with regard to the constructive discharge doctrine, is persuasive and should be adopted in Indiana. In that case, Strozinsky resigned from her position as payroll clerk for the School District of Brown Deer after she and her supervisors disagreed about the tax withholdings from a bonus check that belonged to one of her supervisors. Strozinsky alleged that her supervisors instructed her to not withhold taxes from the check, and that if she had done this she would have violated both a Wisconsin statute and federal tax law. Strozinsky later filed a common law claim for wrongful discharge in which she asserted that she was forced to resign because of her efforts to comply with the law. The School District filed a motion for summary judgment, which the trial court granted. The Wisconsin Court of Appeals reversed, and the School District appealed to the Wisconsin Supreme Court.

The Wisconsin Supreme Court first considered whether Strozinsky identified a public policy exception to the employment-at-will doctrine that would allow her to bring a claim for wrongful discharge. The court held that Strozinsky could bring a claim for wrongful discharge under the public policy exception to the employment-at-will doctrine because she had identified a well-defined public policy in both a Wisconsin and a federal statute. *Strozinsky*, 614 N.W.2d at 447.

The court next considered whether the constructive discharge doctrine should apply to a common law claim for wrongful discharge, and, ultimately, "whether a cause arising from a resignation can be actionable as a wrongful discharge...." *Id.* at 460. The court began by noting that generally an employee who resigns cannot pursue a claim against his employer for wrongful discharge. *Id.* at 461. Despite this, many courts have concluded that an employer should not be allowed to escape liability when he has forced an employee to resign. *Id.* In an attempt to explain why an employer might try to force an employee to resign, the court stated that "[a]ctual discharge carries significant legal consequences for employers, including possible liability for wrongful discharge. In an attempt to avoid liability, an employer may refrain from actually firing an employee, preferring instead to engage in conduct causing him or her to quit.'" *Id.* (quoting *Balmer*, 604 N.W.2d at 641). The court indicated that the constructive discharge doctrine was designed to address "'such employer-attempted 'end runs' around wrongful discharge and other claims requiring employer-initiated terminations of employment.'" *Id.* "The [constructive discharge] doctrine operates 'to discard form for substance, to reject sham for reality' and recognizes that certain resignations are, in fact, actual firings." *Id.* (quoting *Beye*, 477 A.2d at 1201).

The court, though, went on to note its agreement with the trial court that "the constructive discharge doctrine does not present an independent cause of action." *Id.* at 448. Instead, the court concluded

that the constructive discharge doctrine "is ancillary to an underlying claim in which an express discharge otherwise would be actionable." *Id.* at 462. "Constructive discharge joins the actionable claim and operates as a defense against an employer's contention that the employee quit voluntarily." *Id.* The court cautioned that "[a]n employee who relies on a constructive discharge defense in a public policy exception case still must identify a fundamental and well defined public policy and then prove that the discharge, whether constructive or express, violated that policy." *Id.* The court concluded that "the doctrine of constructive discharge can be applied as a defense in a common-law claim [for wrongful discharge] under the public policy exception because some resignations are, in fact, involuntary." *Id.* at 448. The court asserted that this conclusion "recognizes that employers cannot escape liability by coercing a resignation instead of formally uttering the words 'you're fired.' Were we to prohibit this cause of action because the employer forced a resignation instead of expressly discharging the employee, we would elevate form over substance . . . ." *Id.* at 465–66. The court ultimately held that the Wisconsin Court of Appeals properly reversed the trial court's grant of summary judgment in the School District's favor. *Id.* at 466.

Based on *Strozinsky,* I would hold that Indiana recognizes the constructive discharge doctrine as a defense that an at-will-employee can raise in the context of a common law retaliatory discharge claim brought against his employer. Thus, an at-will-employee who has not been expressly discharged can bring a common law claim for retaliatory discharge against his employer if he alleges that he was constructively discharged. In order for an at-will-employee who alleges he has been constructively discharged and has brought a retaliatory discharge claim to survive an employer's Trial Rule 12(B)(6) motion to dismiss, I would hold that the employee must plead sufficient facts to put the employer on notice that (1) he is entitled to bring a retaliatory discharge claim under an exception to the employment-at-will doctrine, and (2) that he was constructively discharged.

Here, Clark has satisfied both of these requirements. Indiana Code section 9–21–7–1 provides that a person may not drive or move on a highway a motor vehicle unless the equipment upon the vehicle is in good working order and adjustment, and the vehicle is in a safe mechanical condition that does not endanger the person who drives the vehicle, an occupant of the vehicle, or a person upon the highway. Indiana Code section 9–21–7–13 provides that an individual who violates Indiana Code section 9–21–7–1 commits a Class C infraction. Clark's complaint alleges that Cripe required him to drive three vehicles that were (1) not in good working order and adjustment, (2) not in a safe mechanical condition, and (3) dangerous to the driver of the vehicle, an occupant of the vehicle, and persons upon the highway. Clark was first assigned to drive a Chevrolet van that had severely worn brakes and tires, lacked any operating turn signals or hazard lights, and was missing one brake light and an interior center rear view mirror. Clark was then required to drive a Ford F–350 diesel dual-wheeled truck, which Clark alleges had defective brakes. Attached to the truck was a trailer that had a flat tire, no brake lights or turn signals, and an improper license plate. Because of the truck's defective brakes, Clark was unable to stop at an intersection of two highways. Clark was also assigned to drive a 1996 Chevrolet utility van that had problems with sudden loss of power while being driven. This vehicle eventual-

ly lost power and stalled in the middle of a busy intersection, nearly resulting in a collision, while Clark was driving it.

By ordering Clark to drive each of these three vehicles, Clark believed Cripe was requiring him to drive a vehicle which could subject him to a class C infraction. Clark eventually approached Dennis Cripe and told him that he refused to drive anymore unsafe vehicles and asked Dennis to provide him with a safe vehicle. Dennis refused to provide Clark with a safe vehicle, which meant that Clark, if he continued to work for Cripe, would have to continue to violate Indiana Code section 9–21–7–1 by driving unsafe vehicles. Clark alleges that this forced him to resign from his position. Had Cripe fired Clark, he would have been entitled to bring a claim for retaliatory discharge because he would have been terminated for refusing to commit an illegal act for which he would have been personally liable, which is an exception to the employment-at-will doctrine.

Clark has also sufficiently alleged that he was constructively discharged. Clark's complaint alleges that during the course of his employment he was required to drive three unsafe vehicles, and that driving these vehicles could have subjected him to criminal liability. Clark informed Dennis Cripe that he refused to continue to drive unsafe vehicles, but Dennis refused to provide Clark with a safe vehicle. Dennis' refusal to provide Clark with a safe vehicle, forced Clark to resign.

However, the majority concludes that even if Indiana recognized the doctrine of constructive discharge, "the averments in Clark's complaint are insufficient to allege that Cripe purposefully created a working condition *so intolerable* that Clark had no choice but to resign." Slip op. at 10 (emphasis in original). Initially, I would point out that Indiana is a notice pleading state. *See* Ind. Trial Rule 8(A). Notice pleading

" 'merely requires pleading the operative facts so as to place the defendant on notice as to the evidence to be presented at trial.' " *Noblesville Redevelopment Comm'n v. Noblesville Assocs. Ltd. P'ship*, 674 N.E.2d 558, 563 (Ind.1996) (quoting *Palacios v. Kline*, 566 N.E.2d 573, 576 (Ind.Ct. App.1991)). " 'A complaint's allegations are sufficient if they put a reasonable person on notice as to why plaintiff sues.' " *Id.* at 564 (quoting *Capitol Neon Signs, Inc. v. Indiana Nat'l Bank*, 501 N.E.2d 1082, 1085 (Ind.Ct.App.1986)). Here, Clark's complaint is sufficient to survive Cripe's motion to dismiss because it puts Cripe on notice regarding Clark's claim that he was constructively discharged.

Additionally, I believe the majority's consideration of whether Clark has shown that he was subjected to intolerable working conditions is an inappropriate inquiry at this stage of the proceedings. "A trial rule 12(B)(6) motion to dismiss for failure to state a claim upon which relief can be granted tests the sufficiency of a claim, not the facts supporting it." *Borgman v. Aikens*, 681 N.E.2d 213, 216 (Ind.Ct.App. 1997), *trans. denied.* When we review a trial court's ruling on a trial rule 12(B)(6) motion to dismiss, we view the pleadings in the light most favorable to the nonmoving party and draw every reasonable inference therefrom in favor of that party. *Id.* The allegations contained in the complaint should be taken as true. *Indianapolis Newspapers, a Div. of Ind. Newspapers, Inc. v. Indiana State Lottery Comm'n*, 739 N.E.2d 144, 151 (Ind.Ct.App.2000), *trans. denied.* Viewing the facts in a light most favorable to the nonmoving party, I believe Clark has sufficiently stated a claim for retaliatory discharge. The majority's consideration of whether Clark has alleged sufficient facts to prove that he was subjected to intolerable working conditions goes beyond testing the sufficiency of

Clark's claim and tests the sufficiency of the facts supporting the claim, which is contrary to our standard of review.

I agree with the majority that "[b]efore the employment situation will be deemed intolerable, . . . the adverse working conditions must be unusually 'aggravated' or amount to a 'continuous pattern' of negative treatment." Op. at 735. However, determining whether an employee has been subjected to intolerable working conditions is a factually intense inquiry that a trial court is not well suited to perform when all it has before it is the plaintiff's complaint. A trial court would be better able to perform this inquiry later in the proceedings after discovery has been done and the parties have filed motions for summary judgment. Thus, I conclude that Clark's complaint alleges sufficient facts to survive Cripe's motion to dismiss.

Therefore, I would affirm the trial court's order denying Cripe's motion to dismiss because I believe Indiana should adopt the doctrine of constructive discharge, and because Clark's complaint has alleged sufficient facts to survive Cripe's motion to dismiss.