United States Court of Appeals
For the Eighth Circuit

_____

No. 12-1717
_____

Super Wings International, Ltd.

*Plaintiff - Appellee*

v.

J. Lloyd International, Inc.

*Intervenor below - Appellant*

Jody L. Keener

*Defendant - Appellant*
_____

Appeal from United States District Court
for the Northern District of Iowa - Cedar Rapids
_____

Submitted: November 15, 2012
Filed: December 17, 2012
_____

Before MURPHY, BENTON, and SHEPHERD, Circuit Judges.
_____

MURPHY, Circuit Judge.

Super Wings International, Ltd. (Super Wings) sued Jody Keener for failing to pay on a promissory note. Keener asserted that he did not have to pay because Super

Wings had breached an agreement it had with Keener's company, J. Lloyd International, Inc. (JLI). JLI intervened, and the case was tried to the court. The district court[1] ruled that Super Wings had fulfilled its contractual obligations to JLI, that Keener was liable for failing to pay on his note, and that JLI's claim against Super Wings should be dismissed. Keener and JLI appeal. We affirm.

Super Wings is a trading and marketing company active in the toy industry. It is based in Hong Kong, and its owner Tim Yip also owns other companies which manufacture toys and the mold and tooling equipment used to make them. Super Wings receives purchase orders from customers, and then contracts with Chinese factories to manufacture the requested items. It also markets other toys made in China. JLI is an American wholesaler and marketer of toys founded by Jody Keener. Keener met Yip in the mid 1990s when the latter was associated with Toy Zone, another toy wholesale and marketing company. In 2006 JLI purchased a number of Toy Zone's assets in China, including many of its molds and tools. Around that time Wai Har Yip, Tim Yip's older sister, became a 50% owner of JLI. Wai Har Yip is also known as Dora Yip.

JLI began purchasing toys and equipment directly from Super Wings in 2006. After JLI submitted purchase orders to it, Super Wings contracted with Chinese factories to manufacture the requested items. JLI was the owner of the molds and tooling used in the Chinese factories making its toys, but that equipment was stored by Super Wings when not in use. When the toys were finished, Super Wings transferred them to JLI which sold them to retailers. From 2006 to 2008, JLI bought over $4 million worth of toys and equipment from Super Wings, but Tim Yip testified that he remembered JLI paying only $300,000 of the amount owed Super Wings.

---

[1] The Honorable Jon Stuart Scoles, United States Magistrate Judge for the Northern District of Iowa, sitting with the consent of the parties pursuant to 28 U.S.C. § 636(c).

Keener testified that by 2008 he "wanted to get out of the relationship" with Super Wings.

To resolve their differences Super Wings and JLI entered into an agreement on December 30, 2008. They agreed that JLI owed Super Wings approximately $4.5 million "for manufacturing various toys, molds and other processes" and that Super Wings would discharge JLI's debt in exchange for the execution of two promissory notes attached to the agreement. One of the notes was for $2 million plus interest and was to be signed by Keener, and the second note was for about $2.5 million plus interest and was to be signed by Dora Yip. Keener and Dora Yip signed their respective notes, making them personally liable for the amounts due. The agreement between Super Wings and JLI also stated that Super Wings was "in possession of certain molds and tooling" owned by JLI, that Super Wings would "complete all work in progress," and that it would "release [JLI's] molds and tooling to a party authorized by [JLI] to receive same." The agreement did not define the term "release" or detail how JLI's property would be released.

At the time of this agreement there was manufacturing work in progress on one particular type of toy, and production was completed on it by the end of July 2009. Super Wings shipped the finished toys and associated molds and tooling to JLI in the United States, and JLI paid the shipping cost. At JLI's direction its agent also picked up other molds and tooling in Super Wings' possession, first in March 2009 and then again in July of that year. Even after these transfers, Super Wings was still in possession of over 90% of JLI's molds and tooling. Thousands of pieces of equipment were stored in warehouses owned by Tim Yip. Since Super Wings had no interest in continuing to store JLI's property, it repeatedly asked JLI to retrieve it. Keener made the first six monthly payments on his promissory note from January to June 2009, but he did not make the one due in July 2009 or any thereafter.

Super Wings sued Keener in August 2009 for failing to pay on his note. Keener's defense to Super Wings' claim was that Super Wings had breached their December 2008 agreement by not releasing JLI's property and therefore he did not have to pay the amount due on his note. JLI moved to intervene as a third party plaintiff in January 2010, claiming that Super Wings had breached their December 2008 agreement by not releasing its property and seeking as damages the value of its property that remained in Super Wings' possession. The district court granted JLI's motion to intervene in February 2010. Over the next several months Super Wings' correspondence with JLI repeated that it was not interested in holding JLI's property and wanted it to be retrieved.

Keener testified at trial that he had requested JLI's molds and tooling from Super Wings "since day 1." Keener did not produce any email, phone record, letter, or other document from before January 2010 in support of this testimony, however. Keener also admitted that he had never given Super Wings a list of the specific property he demanded be released. The district court found that Super Wings had released JLI's property within the meaning of their December 2008 agreement since it had shipped the requested equipment and made the remainder available for pick up at JLI's direction. The court then entered judgment for Super Wings against Keener, concluding that he had not been justified in stopping payment on his note, and dismissed JLI's claim against Super Wings. Keener and JLI appeal, arguing that the district court erred in finding that Super Wings had released JLI's property within the meaning of the December 2008 agreement.

The parties agree that Iowa law governs this diversity case. In a breach of contract action under Iowa law, we will uphold a district court's findings of fact if they are supported by substantial evidence. Jeanes v. Allied Life Ins. Co., 300 F.3d 938, 940 (8th Cir. 2002); NevadaCare, Inc. v. Dep't of Human Servs., 783 N.W.2d 459, 465 (Iowa 2010). We view the evidence in the light most favorable to the district court's judgment, and the "ultimate question is whether the evidence supports the

court's finding, not whether it would support a different finding." NevadaCare, 783 N.W.2d at 468. We review de novo the district court's interpretation of state law. Jeanes, 300 F.3d at 940.

Keener and JLI argue that Keener did not have to pay on his promissory note because Super Wings had not released JLI's property as required by their December 2008 agreement. Under Iowa law a contract becomes unenforceable due to a failure of consideration when "the performance bargained for has not been rendered." Johnson v. Dodgen, 451 N.W.2d 168, 172 (Iowa 1990). Failure of consideration is a complete defense if the alleged failure is "total," meaning one party "has failed or refused to perform a substantial part of what the party agreed to do." Id.

We conclude that there was substantial evidence supporting the district court's findings that Super Wings had released JLI's property as required by their December 2008 agreement. Super Wings shipped some of JLI's equipment back to it as requested and made other property available to be picked up at JLI's direction. Trial testimony and correspondence between the parties show that Super Wings wanted to rid itself of JLI's property and urged JLI to retrieve it. Keener did not present any support for his testimony that he had requested the property "since day 1" or produce any documentation from before January 2010 evidencing JLI's efforts to retrieve its property. Keener also admitted that he had not produced a list of specific equipment in Super Wings' possession even though such a list would have been necessary to transfer the items.

Since the district court did not err in entering judgment for Super Wings against Keener and in dismissing JLI's claim, we affirm its judgment.

_____