

FILED

Jun 24 2025, 10:10 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



IN THE

# Indiana Supreme Court

Supreme Court Case No. 24S-CT-395

## South Bend Community School Corporation,
*Appellant,*

—v—

## Connie Grabowski,
*Appellee.*

Argued: January 23, 2025 | Decided: June 24, 2025

Appeal from the St. Joseph Circuit Court
No. 71C01-1702-CT-61
The Honorable John E. Broden, Judge

On Petition to Transfer from the Indiana Court of Appeals
23A-CT-343

**Opinion by Justice Slaughter**

Chief Justice Rush and Justice Massa concur.
Justice Goff dissents with separate opinion in which
Justice Molter joins as to part I.C.

**Slaughter, Justice.**

Indiana has long been an employment-at-will state. An employer generally may terminate an employee for any reason. A narrow exception to this general rule is that an employer may not fire an employee for pursuing a statutory right. One such example, at issue here, is the right to file a claim for workers' compensation. This narrow exception applies when the employee is fired (or, here, constructively discharged) "solely" for filing (or indicating an intention to file) a workers' compensation claim. Here, the jury's verdict for the employee cannot stand. There is no evidence that the employer discharged the employee **solely** to avoid workers' compensation liability. We reverse the entry of judgment for the employee and remand with instructions to enter judgment for the employer.

I

A

During the 2015–16 school year, Connie Grabowski, the plaintiff, taught second grade for the defendant, South Bend Community School Corporation. One of Grabowski's students during this school year was eight-year-old S.J. That spring, S.J. told his mother, who also taught at the school corporation, that Grabowski said he had "diarrhea of the mouth" and told him to "[s]hut his big fat mouth". The mother reported these allegations to the school's principal. The principal arranged a meeting with Grabowski, S.J.'s mother, and his grandmother—a member of the school corporation's board of trustees—to discuss S.J.'s claims against Grabowski. At the meeting, Grabowski highlighted S.J.'s disruptive classroom behavior, but denied making the statements S.J. attributed to her. She agreed to send home a daily behavioral log for S.J. and to inform his mother of any further classroom disruptions.

The situation deteriorated further the next week. On April 25, while Grabowski lined up her students in the hallway for a bathroom break, S.J. bumped into her. Their contact prompted Grabowski to trip and, in her words, she "fell against the wall." Grabowski initially thought that S.J. ran into her "forcefully" and testified that the other students said the same. For his part, S.J. said the contact was an accident. Other than applying an

icepack to her wrist, Grabowski did not seek, obtain, or require medical care for the incident.

Grabowski documented the incident in several ways. She first reported it to the school's principal. After hearing Grabowski describe the incident, the principal told her to fill out the school corporation's accident-report form—titled "Worker's Compensation Accident Report Form"—before the end of the day. On the form, Grabowski wrote that while in the hallway near the restroom, S.J. "ran forcefully into" her, and that she "fell against the wall", causing her to suffer "tenderness in [her] right ankle, wrist & thigh." Grabowski recounted the same version of events in S.J.'s behavior log. Grabowski also asked to see a video recording of the incident, which was caught on a hallway surveillance camera.

The next day, April 26, Grabowski gathered with school officials to watch the video. In addition to Grabowski, the viewing group included the school principal, a human-resources employee, a school resource officer, and a representative from the teacher's union. The recording showed S.J. and Grabowski bump into each other, causing Grabowski to briefly lose her balance and touch the wall. It also showed their contact was not "forceful", and that Grabowski did not "fall" into the wall; she extended her right arm toward the wall to steady herself.

There was consensus after watching the video that the hallway contact between Grabowski and S.J. was an accident. As Grabowski testified at trial, "we all agreed that it looked like an accident and that was it." The human-resources employee present at the meeting discussed the video with Grabowski and gave her a list of "directives" to "dispel any misconceptions of [S.J.'s] malicious intent". The directives included correcting the behavioral log and accident report to show that S.J. did not run into her deliberately, and writing an apology to S.J. and his mother. Later that day, the principal prepared an "Incident Report" and recorded that the contact was "undeniably an accident and not a deliberate action." The principal also, in violation of the school corporation's confidentiality policy, gave the mother a copy of the accident-report form.

On April 27, S.J.'s mother filed a bullying complaint with the school corporation, alleging Grabowski showed a pattern of harassment toward

her son. The complaint alleged instances of offensive remarks and intimidation, referencing (among other things) the name-calling incident from the prior week. Finding the allegations "concerning", on May 3 the school corporation's human-resources director opened "a full investigation into the allegations". The school corporation placed Grabowski on paid administrative leave during the investigation, which took about two weeks.

After the investigation, on May 24 Grabowski received a same-date letter from the school corporation's superintendent, stating that although her conduct "did not rise to [the] level of unlawful harassment . . . some of your comments and actions were unprofessional and inconsistent with . . . providing a positive, productive, and nurturing educational environment for our students." Rather than responding with progressive discipline, the school corporation offered Grabowski a "last chance agreement". As the name implies, accepting the agreement was Grabowski's "last chance to remain employed", and that "failure to comply with the expectations and directives in this agreement" would lead to her termination. The agreement's terms imposed:

(1) loss of five days' pay;
(2) reassignment to the school corporation's administration building for the remainder of the 2015-16 school year;
(3) transfer to another school for the 2016-17 school year;
(4) professional-development training; and
(5) no contact with S.J. or his mother.

Also on May 24, the school corporation informed S.J.'s mother of the investigation's results. Believing that the investigation's conclusions lacked merit and that Grabowski, who is white, had harassed S.J., who is black, the mother contacted the local chapter of the NAACP, the National Association for the Advancement of Colored People. The NAACP wrote a letter on May 27 to the school corporation stating that it "respectfully disagree[d] with" the results of the school corporation's investigation and requested several policy changes and a public apology from Grabowski. Nothing ultimately came of these requests as Grabowski resigned from the school corporation effective June 14.

## B

After resigning, Grabowski brought two separate proceedings. First, she filed a claim with the EEOC, the Equal Employment Opportunity Commission, alleging racial discrimination against the school corporation. Second, Grabowski brought this suit for wrongful termination. She charged the school corporation with retaliating against her for expressing an intent to file a claim for workers' compensation. This is colloquially called a "*Frampton* claim", referring to our 1973 opinion creating a limited exception to Indiana's strong employment-at-will doctrine "when an employee is discharged solely for exercising a statutorily conferred right". *Frampton v. Cent. Ind. Gas Co.*, 297 N.E.2d 425, 428 (Ind. 1973). Grabowski alleged the school's actions—investigating her for bullying, placing her on leave, offering her a last-chance agreement with strict terms—forced her resignation.

After the trial court denied summary judgment for the school corporation, the case proceeded to trial. Grabowski testified, recounting her history as a teacher, the incident with S.J., and how the school corporation's investigation and decision to offer her a last-chance agreement "traumatized" her. Grabowski explained that she had worked in the school corporation for over twenty years and was a successful and dedicated teacher. She was named "teacher of the year" in 2007 at another elementary school in the district. And in her teacher evaluation following the 2014–15 school year, the principal of Grabowski's elementary school described Grabowski as "an exemplary Second Grade teacher . . . [who] takes pride in making sure her students are well prepared".

At the close of Grabowski's case in chief, the school corporation moved for judgment on the evidence under Trial Rule 50(A). It argued, among other things, that Grabowski's claim fails because she did not show that "the only reason" the school corporation "engaged in the allegedly hostile conduct is because of worker's compensation." The school corporation noted that the jury had heard evidence about "familial relationships" between S.J. and school officials; evidence that these school officials were "irritated or angry" that S.J. was named in the workers' compensation form; and evidence of "racial discrimination" by both sides, referring to the

NAACP's demands and Grabowski's EEOC claim. None of these things, the school corporation said, concerned alleged retaliation against Grabowski for seeking workers' compensation benefits. Thus, the school corporation contended, "no reasonable jury could find that the only reason" for the school corporation's actions was retaliation against Grabowski for stating that she might file a workers' compensation claim.

Grabowski disagreed that she needed to show that the school corporation retaliated against her solely for seeking workers' compensation benefits. She admitted that "the retaliation here was slightly different than the norm", explaining that her theory of retaliation was that "in following [the school corporation's] own policy she identified the name of the person involved which happened to be the [grand]son of a very powerful, and influential board member." Even so, Grabowski insisted it was "up to the jury to decide . . . whether [her discharge] was caused by the [workers' compensation] claim." After considering the arguments, the trial court denied the school corporation's motion for judgment on the evidence. The school corporation repeated its Rule 50(A) motion at the close of all the evidence, which the trial court effectively denied. The jury returned a verdict for Grabowski awarding her $600,000 in damages.

The school corporation appealed, arguing that the trial court erred in denying its Rule 50(A) motions for judgment on the evidence. The court of appeals rejected the school corporation's arguments in a non-precedential decision. *South Bend Cmty. Sch. Corp. v. Grabowski*, 237 N.E.3d 624 (Ind. Ct. App. 2024) (mem.). The panel found sufficient evidence that the school corporation's actions could reasonably be viewed as retaliatory discharge.

The school corporation then sought transfer, which we granted, 245 N.E.3d 1020 (Ind. 2024), thus vacating the appellate decision, Ind. Appellate Rule 58(A). On transfer, we received friend-of-the-court briefs from the Indiana School Boards Association and several Indiana Employer Attorneys. We thank them for their helpful submissions.

II

We reverse the trial court's denial of the school corporation's motion for judgment on the evidence. The evidence at trial did not show—and

Grabowski did not contend—that her injury (constructive retaliatory discharge) was caused solely because the school corporation was trying to avoid workers' compensation liability. Thus, this case should not have gone to the jury.

We review a trial court's denial of judgment on the evidence de novo. *Cosme v. Clark*, 232 N.E.3d 1141, 1152 (Ind. 2024). Trial Rule 50(A) allows a movant to "seek judgment on the evidence at the close of a plaintiff's case if all or some of the issues are 'not supported by sufficient evidence.'" *Id*. at 1148 (quoting Ind. Trial Rule 50(A)). "When ruling on a Rule 50(A) motion, a judge may assess both the quantity and quality of the evidence presented by the nonmovant but may not weigh the conflicting evidence or assess witness credibility; these are fact-finding functions within the jury's sole province." *Ibid.* As with summary judgment, the issue with a Rule 50(A) motion is whether "the evidence supports any reasonable inference in favor of the nonmovant"—here, Grabowski. *Id*. at 1152.

We proceed in two parts. First, we lay out the narrow exceptions, reflected in *Frampton*, to Indiana's strong employment-at-will doctrine. In doing so, we recognize the novelty of Grabowski's *Frampton* claim. Second, we apply our standard for reviewing a motion for judgment on the evidence and find the claim here fails to clear *Frampton*'s requirement of sole causation.

## A

"Indiana follows the doctrine of employment at will, under which employment may be terminated by either party at will, with or without reason." *Baker v. Tremco, Inc.*, 917 N.E.2d 650, 653 (Ind. 2009) (quoting *Wior v. Anchor Indus., Inc.*, 669 N.E.2d 172, 175 (Ind. 1996)). We recognize only three limited exceptions to our employment-at-will doctrine. First, an employer may not fire an at-will employee if an employment contract between them imposes a higher, "good cause" requirement for termination. *Id*. at 654. Second, there is an exception based on the doctrine of promissory estoppel, where the employee shows she relied to her detriment on a broken promise by her employer that led to her termination. *Ibid.* At issue here is the third exception, which applies when an employer retaliates against the employee's exercise of a clear statutory right or duty. *Ibid.*

Grabowski brings a *Frampton* claim alleging that she was constructively discharged in retaliation for indicating that she might seek workers' compensation benefits.

*Frampton* holds that "[r]etaliatory discharge for filing a [workers'] compensation claim is a wrongful, unconscionable act and should be actionable in a court of law." 297 N.E.2d at 428. The rationale for our limited exception is that "[t]erminating an employee for filing a [workers' compensation] claim obviously has a deleterious effect on the exercise of this important statutory right." *Stivers v. Stevens*, 581 N.E.2d 1253, 1254 (Ind. Ct. App. 1991), trans. denied. Over the years, our courts have held that *Frampton* covers employees who merely "suggest[]" they "might file a claim". *Ibid.* And we have recognized that *Frampton* protects against constructive discharge—where an employer's intolerable working conditions leave the employee with no choice but to resign. *Baker*, 917 N.E.2d at 655. Despite these modest expansions, later caselaw has "made it plain that [*Frampton*'s] language is intended to recognize quite a limited exception" to the employment-at-will doctrine. *Meyers v. Meyers*, 861 N.E.2d 704, 707 (Ind. 2007).

Grabowski acknowledges that hers is not a typical *Frampton* claim, where the claimant files for workers' compensation and then is fired by her employer. Neither of these things happened here. Grabowski did not file a claim for workers' compensation; she merely filled out an accident-report form with her employer. And she was not fired; she resigned when presented with the school corporation's "last chance agreement". To be sure, each theory is recognized separately in Indiana. But we have never addressed whether **both** theories in tandem might support a *Frampton* claim. We need not answer that question today. To decide this case, we need only observe that a *Frampton* claim requires the claimant to prove that her employer actually or constructively discharged her solely to deter her from seeking workers' compensation benefits.

### B

To succeed on her *Frampton* claim, Grabowski had to prove three elements: (1) she engaged in statutorily protected activity (seeking workers' compensation); (2) she was discharged; and (3) a causal connection links

the two. See *Best Formed Plastics, LLC v. Shoun*, 51 N.E.3d 345, 351 (Ind. Ct. App. 2016), trans. denied. For purposes of this appeal, we focus only on the causation element. We assume without deciding that Grabowski's actions showed her intent to seek workers' compensation, and the school corporation's actions amounted to constructive discharge.

*Frampton*'s causation element requires the employee to show the discharge occurred "solely for exercising a statutorily conferred right". 297 N.E.2d at 428. Under *Frampton*, "any and all" reasons for the discharge must be to avoid workers' compensation liability. *Purdy v. Wright Tree Serv., Inc.*, 835 N.E.2d 209, 212 (Ind. Ct. App. 2005). "Causation may not be inferred merely from evidence that the employee filed for benefits and was fired." *Smeigh v. Johns Manville, Inc.*, 643 F.3d 554, 560 (7th Cir. 2011).

At trial, then, Grabowski had to prove that the sole cause of her discharge was her threatened workers' compensation claim. She did not do so. Of course, "[t]he question of retaliatory motive for a discharge is a question for the trier of fact." *Tony v. Elkhart Cnty.*, 918 N.E.2d 363, 370 (Ind. Ct. App. 2009) (quoting *Powdertech, Inc. v. Joganic*, 776 N.E.2d 1251, 1261–62 (Ind. Ct. App. 2002)). But the problem here is not conflicting facts or whether the factfinder properly weighed the evidence before it. The problem is that Grabowski did not (and does not) claim that she was fired solely for filling out her employer's accident report. She claims, rather, that she was retaliated against because her report blamed the grandson of a prominent school-board member for their hallway contact.

As Grabowski tells the story, the school corporation did not act against her "until she made a worker's compensation claim that involved naming the grandson of a powerful and influential school board member." Indeed, Grabowski admitted to the trial court that "the retaliation here was slightly different than the norm". At trial, she was upfront that her retaliation theory rested on her having submitted a workers' compensation form that implicated the board member's grandson. And she doubles down on this same theory of the case on appeal. She calls S.J.'s family relationship to a school-board member the "elephant in the room" and says although "many reasons" may support a *Frampton* claim—like "animus toward the worker" or "the high cost of benefits that must be paid"—the "present

case" is based on the school corporation's desire to "defend and exonerate" S.J. In Grabowski's own telling, accordingly, the school corporation's actions were not solely about workers' compensation but school politics.

*Frampton* does not protect this type of claim. *Frampton*'s animating principle is that a narrow exception to our otherwise strict employment-at-will doctrine is necessary so employees can vindicate their statutory right to receive compensation for work-related injuries. "The basic policy behind [the workers' compensation act] is to shift the economic burden for employment connected injuries from the employee to the employer." *Frampton*, 297 N.E.2d at 427. Without the *Frampton* exception, nothing would prevent an unscrupulous employer from threatening discharge or resorting to other *in terrorem* tactics to deter an injured employee from filing a claim, with the result that "the employer is effectively relieved of [its] obligation." *Ibid*. That was our conclusion in 1973, and we do not waver from it today.

*Frampton*'s edifice was and remains that employers that would shirk their "duty . . . to compensate employees for work-related injuries (through insurance)" must be held to account. *Ibid.* In this way, *Frampton* prohibits discharge "where the reason was to punish the employee and dissuade other employees from claiming" workers' compensation benefits. *Martin v. Platt*, 386 N.E.2d 1026, 1028 (Ind. Ct. App. 1979). An employer with a different motivation, though—unrelated to avoiding workers' compensation liability—does not implicate *Frampton*. Of course, a genuine issue of material fact about the employer's motivation or sufficient evidence supporting all issues will typically defeat summary judgment and judgment on the evidence, respectively. See T.R. 56(C) (summary judgment); T.R. 50(A) (judgment on the evidence).

But there is no such dispute on this record. Grabowski's own theory of the case is that the school corporation's mistreatment of her, up to and including its constructive discharge of her, was not "solely" (or even principally) about avoiding workers' compensation liability. It was, instead, about nepotism and school politics—specifically, about "defend[ing] and exonerat[ing]" the board member's grandson.

In sum, the fatal flaw in Grabowski's case is her acknowledgment, consistent with the evidence adduced at trial, that the school corporation's adverse employment action was not motivated solely by its desire to avoid workers' compensation liability. It was motivated, in part, by its desire to insulate the board member's grandson from further scrutiny. Though the school corporation's treatment of this former teacher of the year likely influenced the jury's verdict, this case should not have gone to the jury.

* * *

For these reasons, we reverse the trial court's judgment and remand with instructions to enter judgment for the school corporation.

Rush, C.J., and Massa, J., concur.

Goff, J., dissents with separate opinion in which Molter, J., joins as to Part I.C.

ATTORNEYS FOR APPELLANT SOUTH BEND COMMUNITY SCHOOL CORPORATION
John R. Maley
Peter J. Rusthoven
Barnes & Thornburg
Indianapolis, Indiana

Michael P. Palmer
Benjamin S. Perry
Barnes & Thornburg
South Bend, Indiana

ATTORNEY FOR APPELLEE CONNIE GRABOWSKI
Patrick F. O'Leary
Elkhart, Indiana

ATTORNEY FOR AMICUS CURIAE INDIANA EMPLOYER ATTORNEYS
John D. LaDue
SouthBank Legal
South Bend, Indiana

ATTORNEY FOR AMICUS CURIAE INDIANA SCHOOL BOARDS ASSOCIATION

Kent M. Frandsen

Parr Richey Frandsen Patterson Kruse LLP

Lebanon, Indiana

**Goff, J., dissenting.**

Connie Grabowski taught second grade for the South Bend Community School Corporation (the School) for over twenty years. During the 2015–16 school year, S.J.—whose mother was a teacher at the School and whose grandmother was a senior member of the School's Board of Trustees—was a student in Grabowski's class. S.J. told his mother that Grabowski told him to "shut his big fat mouth" and that he had "diarrhea of the mouth." Tr. Vol. 2, p. 36; Ex. Vol. 6, p. 84. S.J.'s mother later called a meeting with Grabowski and the principal. Grabowski denied making the statements but agreed to document S.J.'s behavior. The next school day, Grabowski was lining up her class in the hallway for a restroom break. S.J. stepped out of the line and walked in front of Grabowski, causing her to trip and fall against the wall. Grabowski completed a "Worker's Compensation Accident Report Form" based on what she believed happened and named S.J. in the form. Ex. Vol. 6, p. 6.

The School's Human Resources director investigated the complaints against Grabowski. Grabowski had never been reprimanded or disciplined before, and she had previously won Teacher of the Year honors. During her decades-long tenure, only about three parents had expressed concern about her. The HR director concluded Grabowski's actions toward S.J. constituted bullying and recommended that the superintendent offer Grabowski a "last chance" agreement that would reassign her to a different elementary school at the start of the 2016–17 school year. *Id.* at 106, 117, 120. Grabowski did not sign the last-chance agreement and instead resigned in June 2016.

Grabowski sued the School, raising a *Frampton* claim—*i.e.*, a claim alleging retaliatory discharge for filing a worker's compensation claim. At the jury trial, the trial court denied the School's Trial Rule 50(A) motion for judgment on the evidence after Grabowski's case in chief. The jury returned a $600,000 verdict in Grabowski's favor. The trial court then denied the School's renewed Rule 50(A) motion.

In my view, there was sufficient evidence to support the jury's conclusion that Grabowski succeeded in her *Frampton* claim. Accordingly, I dissent from the Court's holding that "the jury's verdict for the employee cannot stand" because "[t]here is no evidence that the employer discharged the employee **solely** to avoid workers' compensation liability." *Ante*, at 2.

## I. The trial court properly denied the School's Rule 50(A) motion for judgment on the evidence.

Indiana Trial Rule 50(A) provides, in relevant part, "Where all or some of the issues in a case tried before a jury" at trial "are not supported by sufficient evidence," then "the court shall withdraw such issues from the jury" and "shall enter judgment thereon notwithstanding a verdict." This Court reviews the denial of a Rule 50(A) motion de novo. *Cosme v. Clark*, 232 N.E.3d 1141, 1152 (Ind. 2024). This Court neither reweighs the evidence nor assesses witness credibility. *Id.*

Here, in my view, the trial court did not err in denying the School's Rule 50(A) motion. In *Frampton v. Central Indiana Gas Co.*, this Court held that "[r]etaliatory discharge for filing a workmen's compensation claim is a wrongful, unconscionable act and should be actionable in a court of law." 297 N.E.2d 425, 428 (Ind. 1973). *Frampton* therefore makes an exception to the general rule of at-will employment "when an employee is discharged solely for exercising a statutorily conferred right." *Id*. *Frampton* also applies where an employee is discharged "merely for suggesting she might file a claim." *Stivers v. Stevens*, 581 N.E.2d 1253, 1254 (Ind. Ct. App. 1991), *trans. denied*. And in *Tony v. Elkhart County*, the Court of Appeals extended *Frampton* to claims alleging "constructive discharge" where an employee was compelled to resign. 851 N.E.2d 1032, 1040 (Ind. Ct. App. 2006). Therefore, to succeed on her *Frampton* claim, Grabowski had to prove to the jury that (A) Grabowski suggested to the School she might file a worker's compensation claim, (B) she was constructively discharged, and (C) she was constructively discharged because of her intent to file a worker's compensation claim. As I

explain further below, there was sufficient evidence, in my view, for the jury to conclude that Grabowski succeeded in her *Frampton* claim.

### A. Grabowski indicated to the School she might file a worker's compensation claim.

To succeed in a *Frampton* claim, an employee need not actually file a claim with the Worker's Compensation Board; it suffices for the employee to have acted such that the employer "should reasonably have been expected to think" that the employee would file a claim. *Cleveland v. Maple Leaf Farms, Inc.*, No. 1:10-CV-305, 2012 WL 2064529, at *7 (N.D. Ind. June 7, 2012). After the hallway incident, Grabowski informed the principal of what had occurred, completed a worker's compensation accident report form, and visited the school nurse. In the report, she described "tenderness in right ankle, wrist, & thigh." Ex. Vol. 6, p. 6. The accident report form met the notice requirements for a worker's compensation claim under Indiana Code section 22-3-3-2 by describing the accident (including the date, time, and location), the injury, and any action taken after the accident. In addition, the statute of limitations for a worker's compensation claim is two years, so Grabowski was not required to file the claim as soon as the accident occurred. *See* I.C. § 22-3-3-3(a). From this evidence, in my view, the jury reasonably concluded that Grabowski indicated to the School she intended to file a worker's compensation claim.

The School argues that Grabowski did not suggest that she intended to file a worker's compensation claim. For example, Grabowski declined first aid from the nurse; did not see a physician, go to the emergency room, or become hospitalized; and she never missed work from her injuries. And the record shows that it was standard practice at the School for an employee to complete an accident report form no matter how small the injury and even if the employee had no plans to bring a worker's compensation claim. The jury *could* have concluded from this evidence that Grabowski did not suggest to the School she might file a worker's compensation claim. But the jury did not do so, and this Court must draw all reasonable inferences in favor of the jury verdict. *See Cosme*, 232 N.E.3d at 1152.

## B. The School created a hostile environment, and Grabowski reasonably believed her termination was imminent.

"[C]onstructive discharge occurs when an employer purposefully creates working conditions, which are so intolerable that an employee has no other option but to resign." *Cripe, Inc. v. Clark*, 834 N.E.2d 731, 735 (Ind. Ct. App. 2005). "The essence of the test is whether, under the totality of the circumstances, the working conditions are so unusually adverse that a reasonable employee in plaintiff's position would have felt compelled to resign." *Id.* (internal quotation marks and citation omitted). Another form of constructive discharge occurs "[w]hen an employer acts in a manner so as to have communicated to a reasonable employee that she will be terminated." *Chapin v. Fort-Rohr Motors, Inc.*, 621 F.3d 673, 679 (7th Cir. 2020) (quoting *EEOC v. Univ. of Chi. Hosps.*, 276 F.3d 326, 332 (7th Cir. 2002)). Here, the evidence was sufficient for the jury to conclude that Grabowski was constructively discharged.

According to Grabowski, over the seven weeks preceding her resignation, the School suspended and removed her from the School, separated her from her students just before the end of the school year and prohibited her from having any contact with them, kept her in the dark as to her employment status, disregarded her privacy rights by giving S.J.'s mother a copy of her worker's compensation accident report form, and made her feel marginalized by HR who took no interest in getting her side of the story. Despite having previously won Teacher of the Year and having never been reprimanded or disciplined over her nearly twenty-two-year tenure, the School presented Grabowski with a last-chance agreement instead of progressive discipline. Under that agreement, Grabowski would lose five days of pay, be reassigned to another position in the district, and be forced to admit that her behavior was unprofessional. If Grabowski failed to comply with the expectations of the agreement, her teaching contract would be recommended for immediate cancellation. Finally, the agreement required her to "take no action to contest or challenge the cancellation of her contract," significantly limiting her right to sue. Ex. Vol.

6, p. 15. Rather than signing the agreement, Grabowski chose to resign because she believed her termination was imminent and a union representative told her she'd likely get fired if she did not sign it. She also did not want to "surrender[] her last bit of dignity and self-respect by admitting to misconduct that she had not committed." Appellee's Br. at 30. From this evidence, the jury concluded that Grabowski's working conditions were so hostile that a reasonable person in her position would have felt compelled to resign.

The School argues that Grabowski's work environment was not hostile, citing federal cases where an employee was constructively discharged after experiencing more severe harassment like hearing racist comments, seeing someone brandishing a pistol, receiving pornographic pictures, receiving violent threats, and experiencing inappropriate touching. *See Brooms v. Regal Tube Co.*, 881 F.2d 412, 417, 423 (7th Cir. 1989) (racist comments and pornographic pictures); *Taylor v. W. & S. Life Ins. Co.*, 966 F.2d 1188, 1190, 1194, 1199 (7th Cir. 1992) (brandished pistol); *Patton v. Keystone RV Co.*, 455 F.3d 812, 818 (7th Cir. 2006) (inappropriate touching); *Porter v. Erie Foods, Int'l, Inc.*, 576 F.3d 629, 640 (7th Cir. 2009) (threats of physical violence). The School also argues the last-chance agreement never communicated to Grabowski that her termination was imminent. But, again, the School's argument amounts to an improper request to reweigh the evidence. The jury considered all the evidence and *could* have concluded that the School did not create a hostile enough work environment for constructive discharge. But the jury did not do so, and we cannot reweigh the evidence.

### C. Grabowski was discharged solely because of her intent to file a worker's compensation claim.

Finally, to prevail in a *Frampton* claim, the employee must show the discharge occurred "solely for exercising a statutorily conferred right." *Frampton*, 297 N.E.2d at 428. "The question of retaliatory motive for a discharge is a question for the trier of fact." *Tony v. Elkhart Cnty*, 918 N.E.2d 363, 370 (Ind. Ct. App. 2009) (quoting *Powdertech, Inc. v. Joganic*, 776 N.E.2d 1251, 1261–62 (Ind. Ct. App. 2002)). The Court concludes that Grabowski's

*Frampton* claim fails because she "did not (and does not) claim that she was fired solely for filling out her employer's accident report. She claims, rather, that she was retaliated against because her report blamed the grandson of a prominent school-board member for their hallway contact." *Ante*, at 9.

But constructively discharging an employee because she is about to file a worker's compensation claim involving an incident with the grandson of a prominent school-board member is still discharging her *solely* because she is about to file a worker's compensation claim. The Court reads *Frampton* too narrowly, only applying it where the employer seeks "**solely** to avoid workers' compensation liability." *Id.* at 2. *Frampton* protects a worker from retaliatory discharge where the worker is exercising a statutorily conferred right. And here, the jury could have reasonably concluded that Grabowski was constructively discharged because she was about to exercise her statutory right to file a worker's compensation claim. Even if the School discharged her because the complaint involved the grandson of a school-board member rather than discharging her to avoid compensation liability, the School still discharged her for exercising her statutory right to file a worker's compensation claim. Therefore, the jury could have reasonably concluded Grabowski was constructively discharged *solely* because she was about to file a worker's compensation claim.

## Conclusion

Here, the jury heard all the evidence, was instructed by the trial court on the elements of a *Frampton* claim, and from that evidence concluded that (1) Grabowski indicated she might file a worker's compensation claim, (2) she was constructively discharged, and (3) she was discharged solely for her intent to file a worker's compensation claim. Because we must draw all reasonable inferences in favor of the jury verdict, and there was sufficient evidence to support the jury's verdict, the trial court did not

err in denying the School's Rule 50(A) motion. I would therefore affirm the jury verdict.[1]

Molter, J., joins part I.C.

---

[1] The School and Amicus Indiana Employer Attorneys raise policy arguments that the jury verdict here will limit their ability to use worker's compensation accident report forms and last-chance agreements in the future. But these policy issues can be more appropriately addressed by the General Assembly.